J. M. McAnally et al. v. The Texas Company et al.

No. 5882. Decided November 28, 1934.

(76 S. W., 2d Series, 997.)

*Davidson, Doss & McMahon,* of Abilene, *Martin Aelmore,* of Hutchinson, Kan., *Roy F. Formway,* of Roby, for plaintiffs in error J. B. McAnally et al.; *Beall, Beall & Beall,* of Sweetwater, for plaintiff in error Bolton Smith; *Ferrell & Yates,* of Roby, for plaintiff in error Minnie Polk et al.

The undisputed evidence disclosing that the predecessors of defendants in error were ignorant of the existence of the disputed area, and it being essential for defendants in error to tack the successive possession of their predecessors, title by limitation did not mature under the ten year statute of limitations, there being no privity of estate between such successive predecessors and the defendants in error. Barry v. Jones, 219 S. W., 1113; Shuttles v. Butcher, 1 S. W. (2d) 661; Moran

v. Moseley, 164 S. W., 1093; Erck v. Church, 87 Tenn., 575, 11 S. W., 794; Stevens v. Karr, 119 Texas, 479, 33 S. W. (2d) 725.

The question of whether each of the predecessors of defendants in error treated the disputed land as a part of the original tract or enclosure in passing by transfer the land from one to the other of the respective claimants, should have been submitted to the jury. Alexander v. Good Marble & Tile Co., 4 S. W. (2d) 636 (error denied by Supreme Court); Ormsby v. Ratcliffe, 117 Texas, 242, 1 S. W. (2d) 1084.

*H. S. Garrett,* of Fort Worth, for defendant in error, Texas Company; *Butts & Wright,* of Cisco, for defendants in error, Merry et al; *J. M. Patterson,* of Austin, for defendant in error, Mrs. Maggie A. Teagarden; *John A. Braly,* of Fort Worth, for defendant in error, Southland Royalty Co.; *Stanford & Weingart,* of Wichita Falls, for defendant in error Texland Oil Co.; *Underwood, Johnson, Dooley & Simpson,* of Amarillo, for defendant in error Herman; *Zweifel & Touhy,* of Fort Worth, for defendant in error Carter.

From the facts proven in this case it follows as a matter of law that defendants in error, the Texas Company et al., have good and sufficient title by ten years peaceable and adverse possession against each and all of the plaintiffs in error, hence the judgment and decree of the District Court was and is correct. McAnnally v. Panther, 26 S. W. (2d) 478; Houston Oil Co. v. Jones, 109 Texas, 89; Gunter v. Meade, 78 Texas, 634; Stephens v. House, 257 S. W., 585; Houston Oil Co. v. Gore, 159 S. W., 924.

MR. JUDGE SMEDLEY of the Commission of Appeals, Section B, delivered the opinion for the Court.

This is a suit to try the title to two tracts of land in Fisher County, one containing 123.7 acres in the north part of the south half of Section 8, Block R, W. E. Richardson survey, and the other containing 68.5 acres situated either in the south part of said Section 8 or in the north part of Section 7 of the same block. The south line of Section 8 is the north line of Section 7, and there is uncertainty as to the true location of this line. A third tract containing 28 acres is described in the petition of plaintiffs in error in the trial court, but it is a part of the 123.7 acre tract.

The common source of title was in Coleman and Davidson who were at one time the owners of Sections 7 and 8. Plaintiffs in error McAnally et al. claim ownership of the 123.7 acre tract, and also in the alternative of the 68.5 acre tract, through chain of title from heirs of Coleman and Davidson.

Plaintiffs in error Bolton Smith et al. claim ownership of the 68.5 acre tract through chain of title from Coleman and Davidson, as do plaintiffs in error Mrs. Minnie Polk et al. Defendants in error The Texas Company and Mrs. Maggie A. Teagarden claim ownership of a tract containing 333.35 acres, which they describe as the Mrs. Maggie A. Teagarden tract, and which includes both the 123.7 acre tract and the 68.5 acre tract, and also the land within the south half of Section 8 which lies between said two tracts. Defendants in error assert ownership of the Mrs. Maggie A. Teagarden tract both through deeds from and under Coleman and Davidson, which describe the tract conveyed as containing 257.63 acres, and also through adverse possession for more than ten years.

The trial court instructed the jury to return a verdict against the plaintiffs in error Bolton Smith et al. and plaintiffs in error Mrs. Minnie Polk et al. As between plaintiffs in error McAnally et al. and defendants in error The Texas Company and Mrs. Maggie A. Teagarden one special issue was submitted to the jury, which was in substance whether defendants in error and their predecessors in title, Hill and Sanders, either in person or by tenants, had had peaceable possession of the land in controversy for any consecutive period of ten years. Following an affirmative answer to the issue, judgment was rendered in favor of defendants in error against plaintiffs in error for the title and possession of the Mrs. Maggie A. Teagarden tract. This judgment was affirmed by the Court of Civil Appeals. 32 S. W. (2d) 947.

The facts which form the basis for the trial court's action in instructing a verdict against plaintiffs in error Bolton Smith et al. and Mrs. Minne Polk et al., and for the affirmance of that action by the Court of Civil Appeals are thus correctly stated in the careful and learned opinion of the Court of Civil Appeals written by Judge Leslie:

"December 31, 1888, Coleman and Davidson conveyed to J. M. Ojerholm the north ½ of section No. 7, describing the land by metes and bounds, and stating the tract to contain 320 acres. As part of the consideration for this conveyance, Ojerholm executed and delivered to Coleman and Davidson a series of vendor's lien notes which passed in due course into the hands of Smith and Drought, a firm composed of Francis Smith and H. P. Drought. With these notes was transferred the lien securing the same, 'including * * * superior title' to the land the same as though the assignee of the notes had been the 'original owners and vendors of said land.' Thereafter Smith

and Drought brought suit on the notes and foreclosed the vendor's lien on the land, describing it as in the original deed from Coleman and Davidson to Ojerholm, and calling for 320 acres. On February 6, 1897, Smith and Drought obtained a judgment as prayed for on the notes, with foreclosure on said lands as described in the original deed. * * * In satisfaction of this judgment, Ojerholm, on September 23, 1902, by warranty deed, sold and conveyed to Francis Smith and H. P. Drought his title and interest in the land, describing it as in the original deed to him of December 31, 1888. This conveyance (September 23, 1902) was made by Ojerholm after he had accepted from Coleman and Davidson on December 19, 1892, a deed of correction of the original deed (1888), and also after Coleman and Davidson had parted with the Ojerholm notes, lien and superior title as recited in the transfer just noticed of March 31, 1890. The deed of correction recited it was executed to correct the field notes in the original deed, that it was not intended to affect the vendor's lien in that instrument, and that there was a shortage of 57 acres in the original conveyance, and that Ojerholm was to have a proportional abatement in the purchase price of the land. The correction deed was filed for record February 27, 1893, almost nine years prior to the time Ojerholm conveyed the land to Smith and Drought in satisfaction of the judgment."

The 68.5 acre tract was included within the particular description by metes and bounds contained in the first deed from Coleman and Davidson to Ojerholm, but was not included within the particular description by metes and bounds contained in the correction deed. There were included as a part of the land conveyed by the correction deed a number of acres in Section 7 which were not included in the first deed.

Plaintiffs in error Bolton Smith et al., who claim as heirs of Francis Smith and H. P. Drought, and also plaintiffs in error Mrs. Minnie Polk et al., who claim through deeds from Smith and Drought, assert that they have title to the 68.5 acre tract through the assignment of the vendor's lien notes, together with the conveyance of the superior title reserved to secure the notes, from Coleman and Davidson to Francis Smith Coleman & Company (the predecessors of Smith and Drought), the suit on the notes and the judgment foreclosing the lien, and the conveyance from Ojerholm to Smith and Drought in satisfaction of the judgment. They take the position that Smith and Drought thus acquired the superior title to the 68.5 acre tract unaffected by the correction deed. The Court of Civil

Appeals held that Smith and Drought, by filing suit on the notes and foreclosing the lien, elected to confirm in Ojerholm the superior title which they had theretofore acquired from Coleman and Davidson, and that such rights as Smith and Drought thereafter acquired in any of the lands were acquired solely by the conveyance of Ojerholm to them in satisfaction of the judgment, and further that Ojerholm's deed did not give them title to the 68.5 acre tract because he had theretofore accepted the correction deed and could neither claim nor convey that tract which was not included within the correction deed.

We do not find it necessary to determine and do not decide whether or not the ruling of the Court of Civil Appeals, last stated, if rested solely upon the facts quoted above from that opinion, is correct. We have reached the conclusion that those facts, together with other undisputed facts in the record, sustain the action of the trial court in peremptorily instructing a verdict against plaintiffs in error, Bolton Smith et al., and Mrs. Mnnie Polk et al.

Coleman and Davidson undertook to sell and convey to Ojerholm a tract of land off the north end of Section 7. This deed described the land as the north one-half of Section 7, but it gave a particular description by metes and bounds which included the 68.5 acre tract. About four years later is was believed, on account of a resurvey, that the division line between Section 8 and Section 7 was more than 400 varas farther south, and to correct the error thus ascertained and also to eliminate conflicts with Sections 71 and 72 on the west, Coleman and Davidson executed and delivered to Ojerholm the correction deed. This deed described the land as being the north part of Section 7, giving a particular description which excluded the 68.5 acre tract (as well as the land in conflict with Sections 71 and 72), and making compensation, in part at least, for the excluded land by the inclusion of a strip of land nearly 400 varas wide extending across Section 7 and lying south and outside of the tract described in the first deed.

That Smith and Drought knew of the execution of this correction deed is shown by recitals in the original petition filed in their foreclosure suit. In the judgment rendered in that suit, however, and in the conveyance made to Smith and Drought in settlement of the judgment, the description contained in the first deed was used. Notwithstanding this, the conveyances out of Smith and Drought, and their failure to make any claim to the 68.5 acre tract prior to the institution of this litigation, clearly evidenced their belief that the land

which they had acquired was substantially the same as that conveyed by the correction deed to Ojerholm, and evidenced further their recognition of the south line of the 68.5 acre tract as marking the boundary line between Section 7 and Section 8. The first of these deeds was made by Frances Smith to Jas. M. Davis. The land conveyed by the deed is first described in it as being a tract of 247½ acres "out of the north end of Section 7" and it is then particularly described by metes and bounds, so that it is, with some unimportant differences in distances, the same land as that conveyed by the Ojerholm correction deed. The other owner, Drought, executed a separate deed to Jas. M. Davis describing the land in general terms as "all of the north one-half of Survey No. Seven (7)" but making express reference to the deed from Francis Smith to Davis "for full and complete description by metes and bounds.

The statement of facts contains no other deed out of Smith and Drought and contains no evidence suggesting that either of them, or any of the heirs of either of them, ever paid taxes on the 68.5 acre tract or ever possessed it or ever asserted a claim to it after the execution of the deed of settlement by Ojerholm up to the time of the institution of this litigation. The same is true of plaintiffs in error Mrs. Minnie Polk et al., who offered and relied upon as their chain of title the same deeds as those offered by plaintiffs in error Bolton Smith et al., together with the two deeds to Davis, above described, and deeds from and under Davis, describing the land conveyed by referring to and adopting the description contained in the deed from Francis Smith to Davis.

The undisputed evidence is that the 68.5 acre tract, as early as 1911, was enclosed in what was known as the Sanders pasture by fences built by the owners of the adjoining lands, one of these fences being that along the south line of the 68.5 acre tract which still stood at the time of the trial; and the only possession of the 68.5 acre tract of which proof was offered on the trial was that of Sanders, Hill and Mrs. Teagarden, who had a chain of title to 257 acres out of the south part of Section 8.

It is thus apparent that the parties, and in particular Smith and Drought, after the execution of the deed of settlement by Ojerholm, adopted as a correct description of the north part, or north one-half, of Section 7 that contained in the Ojerholm deed of correction and recognized and acted upon the north line of the tract described in that deed as marking the division line between Section 7 and Section 8.

■ Attaching perhaps undue importance to the general description ("the north one-half of survey No. 7") in the original deed from Coleman and Davidson to Objerholm, Smith and Drought very evidently concluded, after the settlement, that the land which they had acquired was that described in the deed of correction. After reaching that decision they asserted title to and exercised dominion over all of the land described in the correction deed, including the tract to the south which was not within the bounds of the tract described in the original deed. By so doing they not only adopted the correction made in the second deed from Coleman and Davidson to Ojerholm but they also became in effect parties to the boundary agreement evidenced by that deed. After these acts on the part of Smith and Drought and after they thus obtained the benefit of the correction deed and of the additional land included in it, their heirs cannot in fairness now be heard to say that they are the owners of the 68.5 acre tract excluded from that deed. The controlling principle is the same as that under which title to land is acquired or lost by boundary agreement or by parol partition followed by possession.

■ As indicated by references made above to the deed from Francis Smith to Jas. M. Davis, we hold that the Court of Civil Appeals correctly gave effect to the particular description and correctly held that the deed did not convey the 68.5 acre tract. The deed states that the land conveyed is a tract of land "out of the north end of Section 7" and then that the tract contains 247½ acres and "is described by metes and bounds as follows." There follows a complete description by metes and bounds which, by tying to corners of Sections 71 and 72, as well as by the use of a connecting call to the southwest corner of Section 210, clearly fixes the north line of the tract conveyed as coinciding with the south line of the 68.5 acre tract. The description in this deed illustrates the value and reason in the rule applied by the Court of Civil Appeals, that a particular description in a deed will ordinarily control a general description, for the general description, a tract of land "out of the north end of Section 7 * * * containing 247½ acres" is, to say the least, uncertain. In addition to authorities cited by the Court of Civil Appeals see: Cullers v. Platt, 81 Texas, 258, 16 S. W., 1003; 14 Tex. Jur., Section 247, pp. 1040-1041, and cases cited. The conveyance from Drought to Davis was plainly intended to convey no other land than that theretofore conveyed by Smith to Davis.

■ We agree with the conclusion of the Court of Civil Appeals that proof of the fact that the correction deed was filed and recorded raised a prima facie presumption that the deed was accepted by Ojerholm. Chapman v. Kellogg (Com. App.), 252 S. W., 151; City of San Antonio v. San Antonio Academy, 259 S. W., 995; Luzenburg v. Bexar Building & Loan Ass'n., 29 S. W., 237, (application for writ of error refused); Moser v. Tucker, 195 S. W., 259; Owens v. Jackson, 35 S. W. (2d) 186; Haraway v. Haraway, 59 S. W. (2d) 249; 14 Texas Jurisprudence, pp. 838-839; 8 Ruling Case Law, p. 1004.

Since no evidence was offered to rebut the presumption of acceptance of the deed, it is unnecessary to determine whether the trial court erred in overruling the motion to quash the deposition in which Ojerholm testified to his acceptance of the deed.

The case as between plaintiffs in error McAnally et al. and defendants in error The Texas Company and Mrs. Maggie A. Teagarden is one of title by adverse possession for ten years. Coleman and Davidson conveyed to A. A. Sanders on September 14, 1889, a tract of land, describing it by metes and bounds as beginning at the southeast corner of Section 8 on the West line of Section 210, the deed reciting that the tract contained 257.63 acres. Because of uncertainty as to the true location of the southeast corner of Section 8, it is impossible to determine exactly what land was conveyed by this deed. However, it was undoubtedly a part of the land which is described in the judgment of the trial court as the Mrs. Maggie A. Teagarden tract. On June 25, 1919, Sanders executed a deed to W. A. Hill and Mrs. Maggie A. Teagarden, using the same description as was contained in the deed last referred to. W. A. Hill, with the same description, conveyed the land to Mrs. Teagarden on June 25, 1921. Mrs. Teagarden, on May 10, 1928, conveyed to The Texas Company a tract of land described as being a part of Section 8 and containing 257.65 acres more or less. This deed described the land conveyed by metes and bounds in such way as to make it substantially the same land as that described in the judgment as the Maggie A. Teagarden tract of 333.35 acres.

Possession of this land was held by tenants, and none of the several successive occupants or possessors, Sanders, Hill and Mrs. Teagarden, or Mrs. Teagarden, had possession of the land for a period of ten years, so that limitation title could not be acquired without tacking the successive possession. Plaintiffs in error McAnally et al. admit in their application for writ

of error that the two tenants, Steele and Milstead, possessed and used the land in controversy for a period of ten years or more.

■ The Court of Civil Appeals found that, although the respective deeds on down through the successive claimants did not by their field notes cover the entire tract of land described in ,the judgment, yet each of the claimants, beginning with Sanders, treated the entire tract as an identity or well known enclosure, passing by transfer from one claimant to the other, and that each claimant transferred the possession of the entire tract to his succeeding claimant. It concluded that the attribute of privity was thus established.

That portion of the opinion of the Court of Civil Appeals which discusses the rules applicable to this phase of the case is so well expressed and so thoroughly supported by authorities, all of which we have examined, that we quote it with approval as follows:

"Our statute (article 5516, R. S. 1925) provides that: 'Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them.'

"Privity of estate, as said in section 89, p. 169, vol. 2, Tex. Jur., is shown under the following circumstances: 'Privity of possession between successive occupants or possessors of the land is shown to have existed, apparently, by proof that the earliest occupant's possession and claim passed or was transferred to the later occupant by agreement, gift, devise or inheritance. The fact of privity is not established where it simply appears that the land was occupied by different persons successively, there being nothing to show that the claim of the earlier was transferred to the later occupant by contract or otherwise.'

"In determining the privity of estate by the process of tacking, C. J. vol. 2, p. 91, Sec. 96, states the general rule: 'The general rule is that possession can not be tacked to make out title by prescription where the deed under which the last occupant claims title does not include the land in dispute. It must clearly appear that the particular premises were embraced in the particular deed or transfer, in whatever form it may have been made.'

"The important exception is:

" 'However, the mere fact that the land in dispute is not included in the deed will not of itself operate to deprive the grantee's possession of the land of the attribute of privity. Even though the deed may have contained a defective descrip-

tion as to require correction, yet sufficient privity exists between the successive occupants where there was a parol delivery of possession, and there are numerous decisions to the effect that a mistake in a deed whereby a portion of the premises intended to be conveyed has been omitted in the description does not prevent the grantee from acquiring title by prescription to such portion if there is an actual transfer of the possession thereof. *But an actual transfer of possession is of course necessary where the land is not included in the deed.* (Italics ours.) So it has been held that independently of any question of mistake successive grantors may transfer their possession of a strip of land successively and continuously occupied as part of the granted premises, but not included in the description in any of the deeds, and that by such continuity of possession for the prescriptive period, title by limitations may be acquired. The decisions in this and the preceding section, it may be observed, are readily distinguishable. In the first line of decisions the deed is relied on to establish privity, while in the second line of decisions, the actual transfer of delivery of possession is relied on. This, as was shown in a preceding section, is sufficient to create privity; a parol transfer accompanied by delivery being sufficient for that purpose.'

"These rules are plain, and find general application in Texas, and we have found no Texas case upon this question, where it was decided that privity of estate existed, which does not give effect to the above-quoted general rule, or one of the exceptions thereto. Tex. Jur. vol. 2, Sec. 87 et seq.

\* \* \* \* \*

"For the purpose of transferring rights to mature a title by the ten years' statute of adverse possession, it was not necessary that the deed describe all the lands. Davis v. Adams, 61 Tex. Civ. App., 223, 129 S. W., 150, 151; Moran v. Moseley (Tex. Civ. App.), 164 S. W., 1093; Shuttles v. Butcher (Tex. Civ. App.), 1 S. W. (2d) 661, 665; Clithero v. Fenner, 122 Wis., 356, 99 N. W., 1027, 106 Am. St. Rep., 978; Rich v. Maffziger, 255 Ill., 98, 99 N. E., 341, 343.

"In fact, it is not essential that there be any deed at all for perfecting of title under said statute. Houston Oil Co. v. Gore (Tex. Civ. App.), 159 S. W., 924-928; Bennette v. Collins, 54 Tex. Civ. App., 16, 116 S. W., 618-620; Davis v. Adams, 61 Tex. Civ. App., 223, 129 S. W., 150, 151; Moran v. Moseley (Tex. Civ. App.), 164 S. W., 1093; Belotti v. Bickhardt, 228 N. Y., 296, 127 N. E., 239.

"As said in Shuttles v. Butcher, supra: 'An actual transfer

of an adverse possession is necessary to attribute privity where the land is not included in the deed.' This excerpt is a brief statement of the main element in this controversy. A purchaser's possession must be referable to that of the vendor."

To the foregoing quotation from the opinion of the Court of Civil Appeals, we add the following:

"So in the present case we think it immaterial that some of the conveyances through which some of the parties claim fail to accurately describe the land in controversy, provided it appears, as here, that the several grantees therein, by reason thereof, claimed and exercised acts of ownership over the land, and that the assumption of this right is referable to such transfers. Indeed, if there had been no conveyances whatever and the respective parties through whom appellees claim had verbally sold their claim and their respective vendees had gone into possession by reason thereof, holding the same for the necessary period, it would be sufficient." Moran v. Moseley, 164 S. W., 1093.

"Again, it is immaterial that conveyances between the different occupants fail accurately to describe the disputed tract, the evidence showing that the several grantees claimed and exercised acts of ownership over the land, assuming to do so by virtue of the transfers. Indeed, under the ten years' statute, no written instrument of conveyance is essential to the tacking of the periods of possession of different persons; a verbal sale suffices." 2 Texas Jurisprudence, p. 171, sec. 90.

See also 1 Ruling Case Law, pp. 717-720, Secs. 31-33; Note, 46 A. L. R., pp. 795-799; Bateman v. Jackson, 45 S. W., 224; Howind v. Scheben, 233 Ky., 139, 25 S. W. (2d) 57.

Plaintiffs in error McAnally et al. do not question the correctness of the principles of law above stated. They concede that it was not necessary, for the purpose of transferring rights to mature a title by prescription, that the deeds describe all of the land. They make in the main two contentions: First, that there is no evidence to support the finding of the Court of Civil Appeals, that each of the claimants treated the entire tract as an identity or well known enclosure and that each transferred possession of the entire tract to the succeeding claimant; and second, that the undisputed evidence is that the tenants held under lease contracts which pertained to but 257.63 acres, and that therefore the acts of adverse possession by such tenants beyond these acres did not inure to the benefit of the landlords, citing Williams v. Fuerstenberg (Com. App.), 23 S. W. (2d) 305.

On account of these two contentions we have carefully examined the entire statement of facts, we have reached the conclusion that the evidence thoroughly sustains the opinion of the Court of Civil Appeals, and indeed that no finding could reasonably be made from the evidence than that the entire tract did acquire an identity as the Sanders land or Sanders pasture (later known as the Teagarden land), and that possession of it as such was transferred from Sanders to Hill, and Mrs. Teagarden and from Hill to Mrs. Teagarden.

The land was used for grazing, being of but little value, a part of it very rough. The rent paid was small $25.00 or $50.00 per year for the pasture. The first actual possession proven was that of Frank Steele, who was the tenant of Sanders. Steele possessed the entire tract now referred to as the Mrs. Maggie A. Teagarden tract from the year 1910 or 1911 to January 1, 1916, when he surrendered possession to R. L. Milstead, who also first leased the land from Sanders. There was no written lease either to Steele or Milstead. Each simply took possession under oral agreement or agreement evidenced merely by correspondence and payment of rent. Steele testified to his familiarity with "that tract of land," referring to the entire tract of which he took possession as Sanders' tenant. When he went into possession the land was enclosed by fences built, it appears, by the owners of the adjoining lands, except that there was no fence for about a half mile along the West line of the tract. His father owned the adjoining land in the northeast quarter of Section 210 and he removed some fence from the West line of his father's land and placed it where there had been no fence along the West line of the Sanders land, so that during the possession of Steele the Sanders land was enclosed with the Steele land. Thus the Sanders land during Steele's possession of it was fenced on all sides except that there was no fence along its east line where it adjoined the land owned by Steele's father. Steele testified that he did not know how much land Sanders owned in the enclosure, that he "just leased the pasture" and further that he "just simply leased the Sanders land."

When Milstead leased the land from Sanders on January 1, 1916, he built a fence on its east line adjoining the Steele land, Sanders paying for the wire, and from that time until the trial of this case the Sanders land, the entire tract, was completely enclosed by fences. Milstead used the land for grazing purposes until January 1, 1927, paying rent for it each year, at first to Sanders and later to J. Gregg Hill for W. A. Hill

and Mrs. Teagarden and for Mrs. Teagarden, except that no rent was paid for the year 1925. During his tenancy he used all of the land within the enclosure. In his testimony he spoke of the land as "the pasture" and he testified that he used all of the pasture. While he did state that in his correspondence or dealings with the agent of Sanders the land owned by Sanders was referred to as a 257 acre tract, and that he treated it and handled it as the Sanders 257 acre tract of land, he also testified, when referring to land that he leased:

"When I got it, it was known as the Sanders land and it was later known as the Teagarden pasture, the whole tract."

H. A. Sanders, a son of A. A. Sanders, visited this land in 1916 for the purpose of seeing a tank which his father had caused Milstead to build, and also for the purpose of inspecting the fences. He found the land completely enclosed by fences. He returned and inspected the fences in the year 1929 and found the land enclosed by the same fences that he inspected in 1916. These fences enclosed the entire tract as it is described in the judgment. Sanders testified that he did not know how much land there was in the pasture when he inspected it in 1916. He further testified:

"From about 1911 down to the time that my father sold this land to Mrs. Teagarden and Mr. Hill, my father continuously claimed all the land in that pasture enclosed within those fences."

The tank built by Milstead is shown to be situated upon the 123.7 acres which plaintiffs in error seek to recover.

Mrs. Christine Sanders, widow of A. A. Sanders, testified that after the execution by her and her husband of the deed to Hill and Mrs. Teagarden in 1919, neither she nor her husband ever asserted or claimed any interest in any land either in Section 7 or in Section 8.

J. Gregg Hill represented his brother, W. A. Hill, and his mother-in-law, Mrs. Teagarden, in their purchase and ownership of the Sanders land. Although he never saw the land, his brother, W. A. Hill, inspected it before the deal was closed. J. Gregg Hill leased the land to Milstead each year from 1919 to 1925, and collected the rent. He testified:

"I know that before Mr. Sanders sold the land to my brother and Mrs. Teagarden, that Mr. Sanders was claiming all the land under fence. He claimed all the land under fence.

"As the agent of Mrs. Teagarden, from the time that the land was purchased from Sanders, until the time that Mrs. Teagarden bought out the interest of Mr. Hill, Mrs. Teagarden

and Mr. W. A. Hill claimed all the land under the fence.

"From the time that Mrs. Teagarden purchased Mr. Hill's interest, up until the time she sold the land to The Texas Company, Mrs. Teagarden claimed all the lands under fence."

The records in the tax collector's office show that no taxes were paid on land in the south half of Section 8 from 1901 to 1928, except by A. A. Sanders for the years 1901 to 1919 inclusive, by J. Gregg Hill for 1920 and 1921, by Mrs. Teagarden for 1922 to 1927 inclusive, and by The Texas Company for 1928. These payments were upon 257 acres.

Neither J. B. Coleman nor J. D. Davidson, and no heir of either of them, made any conveyance of any land in Section 8 from the time of the execution of the deed to Sanders on September 14, 1889, until the year 1928, a short time before the institution of this litigation; and during that period of almost forty years neither Coleman nor Davidson, and no heir of either of them, possessed, or is shown by the record to have claimed or sought to possess, any of the land in controversy.

The evidence which has been referred to shows beyond controversy, in our opinion, that the entire tract acquired at the beginning of Steele's possession and continued to have an identity as a tract or pasture, and that as such it was sold, and that possession of it as such was passed from the one owner to the other.

■ There was no manual delivery of possession by seller to buyer, but there is evidence of actual delivery of possession of the entire tract from one to the other through the possession of the tenants. Steele, the first tenant of Sanders, surrendered possession of the pasture to Milstead when Milstead leased it from Sanders. Milstead used and possessed all of the land during the ownerships of Sanders, Hill and Mrs. Teagarden, and Mrs. Teagarden. When Sanders sold to Hill and Mrs. Teagarden, Milstead became their tenant and paid rent to them and possessed the land for them, and thereafter Sanders neither possessed nor claimed the right to possess any of the land within the enclosure. And likewise when Hill sold to Mrs. Teagarden, Milstead became Mrs. Teagarden's tenant, paid the rent to her, and his possession was possession for her. Each owner believed and intended, as is shown by the conduct of all the parties, that when he sold the land to his successor and evidenced the sale by the execution of his deed he was selling all of the land within the enclosure, and on account of that belief and intention he surrendered to his successor possession of all of the land and all of his rights of possession. Each

owner before his sale claimed and possessed by tenant the entire tract and each purchaser after his purchase claimed and possessed by tenant the entire tract, and no owner after his sale asserted any claim to any of the land within the enclosure.

It is true that the land was often referred to as 257 acres, or as a 257 acre tract, but it clearly appears that this happened because neither the owners nor the tenants knew that the enclosure contained any substantial excess, and the parties in so referring to the land were assuming that the deeds described all of the land within the fences. The fact that the land was sometimes called "no man's land" does not affect the title which was acquired by the deeds or that which was acquired by adverse possession. The term was applied to the whole area within the enclosure, not merely to the excessive acreage. Moreover, one witness explained that the land was called "no man's land," because "it was off out of the way there," and because no one lived upon it and it was without improvements and uncultivated. These and other isolated statements in the testimony may seem to support in a measure the contention that there was no sale or delivery of lands other than the tract described in the deeds, but the evidence as a whole and the history of the transactions with respect to the land reasonably lead to no other conclusion than that reached by the Court of Civil Appeals.

The facts in evidence establish the necessary privity for the tacking of the possession of the several claimants.

■ The assignment of error presenting the contention that the trial court should have submitted to the jury the question whether each of the predecessors of defendants in error treated the disputed lands as a part of an original tract or enclosure, passing by transfer from one claimant to the other, is overruled because of our opinion, hereinabove expressed, that no other reasonable conclusion may be drawn from the evidence than that the lands were so treated and so transferred.

■ The second contention made by plaintiffs in error McAnally et al. is predicated upon Williams v. Fuerstenberg (Com. App.), 23 S. W. (2d) 305, which held that the landlord could not through possession by his tenants acquire title by prescription to 82 acres out of Section 32 adjoining Section 39 owned by the landlord, when the 82 acres were fenced in with Section 39 by the tenant without authority from the landlord, and when each of the leases made to the successive tenants described the land leased as Section 39. The gist of the decision in that case

is that possession of the tenants could not inure to the benefit of the landlord in any other land than that covered by the leases.

That case differs from this case because, as has been shown in a discussion of the evidence, which need not be repeated, the entire tract, including the land described in the deeds and also that in controversy, was leased by each of the several landlords to the successive tenants. There was no written lease. Each tenant simply leased and possessed the pasture, paying $25.00 or $50.00 per year for its use. In the transactions between the landlord and the tenants, as well as in the several sales, the land was regarded and dealt within a general way so as to include all that was within the enclosure. Thus the possession by the tenants was the possession of the lessors.

The evidence most strongly stressed by plaintiffs in error is in substance that the land was referred to by some of the lessors and the lessees as 257 acres, or as a 257 acre tract, but it is apparent that they did so because they did not know about the excessive acreage, and all of the evidence makes it clearly apparent that they were in fact contracting with respect to the entire tract or pasture.

Steele, in building a half mile of fence along the west line of the pasture, was not going upon other land and placing within the enclosure land not covered by his lease, as the tenant in Williams v. Fuerstenberg did. His testimony shows that he was merely closing a gap in the fence along the west line of the tract which he had leased. Plaintiffs in error are not contending that Steele by the construction of the fence included within the enclosure land which lay west of that leased. The land they seek to recover lies to the north of the 257 acres as located by their witnesses.

Under the facts of this case and in harmony with the rules announced in Williams v. Fuerstenberg, the possession of the tenants was the possession of the landlords.

The judgment of the trial court and that of the Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court November 28, 1934.