## MANNING et ux. v. HUMBLE OIL & REFINING CO. et al.

### No. 2905.

Court of Civil Appeals of Texas. Beaumont.
March 11, 1936.

Rehearing Denied March 18, 1936.

578

S. A. McCall and Effie Harper, both of Conroe, for appellants.

Pitts & Liles, of Conroe, and R. E. Seagler, C. M. Hightower, and Vinson, Elkins, Sweeton & Weems, all of Houston, for appellees.

WALKER, Chief Justice.

This suit was filed in the district court of Montgomery county on the 24th day of October, 1934, by appellants, Joe Manning and wife, against appellees, Humble Oil & Refining Company et al., to recover the title and possession of block 43, containing 5 acres of land, in the Security subdivision of the C. A. West survey in Montgomery county, and three small tracts of land adjoining block 43, tract No. 1, containing $1\%_{100}$ acres, tract No. 2, 1.43 acres, and tract No. 3, $6\%_{100}$ acres. On the trial it was agreed that appellants owned the surface rights and appellees the mineral rights to block 43; that appellees owned the record title from and under the original grantee to tracts Nos. 1, 2, and 3; and that appellants' only claim to these three tracts of land was under the statute of limitation of ten years. Judg-

ment was entered in favor of appellees upon an instructed verdict.

By deed dated the 3d day of February, 1934, J. A. Young and others conveyed to appellant Joe Manning block 43, containing 5 acres, under a specific description, and the other three tracts of land under a general description, sufficient to convey to Manning whatever title he had in and to these three tracts of land. Claiming under that deed, appellants offered the following testimony in support of their title by limitation: On May 17, 1916, W. B. Wren conveyed to Benjamin C. Taylor block No. 43. On September 2, 1916, Taylor conveyed block 43 to Johnnie Real and wife; on the date of that conveyance Taylor had under fence block No. 43 and tracts Nos. 1, 2, and 3, in controversy in this suit, claiming all the land under his fence, believing that all the land under fence was a part of block 43. By regular chains of conveyances this title passed from Johnnie Real and wife to John L. Outlaw, Jr., who on March 4, 1924, conveyed the land to Albert Morehead, who, on February 22, 1929, conveyed it to J. A. Young, who, as stated above, conveyed it to Joe Manning on February 3, 1934. The original fence erected by Benjamin C. Taylor around this land while he was in possession continued on that location until after Young conveyed to Manning. The holders of the title to block 43, from the date of the deed from Taylor to Real, to the date of Young's deed to Manning, claimed all the land under fence, believing that it was a part of block 43.

Appellants correctly assert that their limitation period began with the possession of Benjamin C. Taylor, as it was transferred by him to Johnnie Real on the 2d day of September, 1916; that that is a certain date from which to compute their limitation. Also, as the claimants, while in possession, claimed all the land as a unit, believing that it was a part of block 43, limitation continued to run in their favor from September 2, 1916, and, on the issue of limitation, it was immaterial that tracts Nos. 1, 2, and 3 were not a part of block 43. McAnally v. Texas Co., 124 Tex. 196, 76 S.W.(2d) 997.

As limitation began to run in favor of appellants' title on the 2d of September, 1916, by force of the statute of ten years' limitation the title became perfected in Albert Morehead on September 2, 1926; he

and those under whom he held had been in continuous, adverse possession of all the land under fence from September 2, 1916. Morehead's deed to Young of February 22, 1929, conveyed only block No. 43, that is, the 5-acre tract; that deed conveyed no part of tracts Nos. 1, 2, and 3. Morehead and Young thought the deed unto Young conveyed to him all the land under fence, but in that they were mistaken; this is not a suit, nor is any proposition advanced to that effect, to correct the Morehead-Young deed to make it include tracts Nos. 1, 2, and 3. The theory of appellants is that they acquired title to these three tracts by the agreement whereby Morehead surrendered possession and claim to all the land under fence to Young. This proposition has no support in law; "a limitation title can no more be conveyed orally than can a record title, and hence a verbal relinquishment is ineffectual." 2 Tex.Jur., Adverse Possession, par. 8, p. 21. In Houston Oil Co. v. Gore, 159 S.W. 924, 926 (writ refused), speaking for the Galveston Court of Civil Appeals, Judge Reese said:

"A verbal sale of the improvements and right of possession by one in possession of land under the ten-year statute of limitation, made before such possession and claim has matured into a title under the statute, is sufficient to constitute privity between such vendor and vendee, and to enable him to tack his possession to that of his vendor. Johnson v. Simpson, 22 Tex.Civ.App. 290, 54 S.W. 308.

"But after such possession and claim has matured into a title under the statute, a verbal sale of the land fails under the general rule, and is void under the statute of frauds, unless circumstances exist which, under well-settled rules of equity, take it out of the operation of the statute. It seems to be well settled that in such case payment of the purchase money and taking possession alone will not suffice to relieve such sale from the bar of the statute of frauds. Ann Berta Lodge v. Leverton, 42 Tex. 18; Hibbert v. Aylott's Unknown Heirs, 52 Tex. 530. Where the making of permanent and valuable improvements is relied upon, such improvements must bear some relation to the value of the property, and, if they are of very slight and insignificant value, they will not have this effect. Cobb v. Johnson, 101 Tex. [440] 443, 108 S.W. 811; Ann Berta Lodge v. Leverton, supra; Eason v. Eason, 61 Tex. [225] 227; Bradley Owsley, 74 Tex. [69] 71, 11 S.W. 1052.

"The burden of proof is upon one who relies upon such improvements to take such verbal sale out of the statute to show that such improvements were of such value, compared to the value of the land, as to answer the requirements of the law as stated in the decisions cited. In any case it must be shown that such improvements were permanent and of some appreciable value."

In Campbell v. Castle, 204 S.W. 484, 485, speaking for the Texarkana Court of Civil Appeals, Mr. Chief Justice Willson said: "It appeared that, if the ten years' statute of limitations had operated at all in Cross' favor, it had operated long enough to perfect title in him. Therefore the purpose of the testimony was not to connect possession by appellant of the land with that by Cross in an effort to show that an inchoate title in the latter had been perfected by continued adverse possession of the land by the former. The purpose was to show that a title perfect in Cross by operation of the statute had passed from him to appellant. It was not pretended that the case appeared from testimony already before the court, or could be shown by testimony producible, to be within any exception to the rule that land cannot be 'conveyed from one to another, unless the conveyance be declared by an instrument in writing subscribed and delivered by the party disposing of the same, or by his agent thereto authorized by writing.' Vernon's [Sayles' Ann. Civ.] Statutes [1914] art. 1103; Houston Oil Co. v. Gore [Tex.Civ.App.] 159 S.W. 924; Allen v. Allen, 101 Tex. 362, 107 S.W. 528."

As plaintiffs below, it was necessary for appellants to recover on the strength of their title; it clearly appears from the statement made that they had no title and, on the theory discussed, judgment was correctly instructed against them.

Appellees held the title to all minerals in and to tracts Nos. 1, 2, and 3 under lease and deed executed by Young, prior to the execution of his deed to appellants. Therefore, appellants, by their deed from Young, acquired no interest in the mineral rights. We do not discuss this proposition further because, clearly, the trial court correctly instructed the verdict in favor of appellees, not only for the surface rights, but also for the mineral rights, under the theory first discussed above.

The judgment of the lower court is in all things affirmed.