**CATCHING v. BOGART.**

No. 5109.

Court of Civil Appeals of Texas. Amarillo.

Jan. 29, 1940.

Rehearing Denied March 11, 1940.

246

R. A. Baldwin, of Slaton, for appellant.

Griffin & Morehead, of Plainview, for appellee.

FOLLEY, Justice.

This is a suit in trespass to try title brought by the appellant, G. J. Catching, against the appellee, Walice Bogart. The appellant sought recovery for the title and possession of two tracts of land in Hale County, Texas, and for rentals thereon, the first tract containing 29 acres in Survey 19 and the second containing 5 acres of Survey 12, of the Subdivision of Leagues Nos. 1, 2, 3 and 4 of the Sabine County School Lands, situated in Hale County, Texas.

The appellee answered by a plea of not guilty, specially pleaded the ten year statute of limitations, Vernon's Ann.Civ.St. Art. 5510, claiming peaceable and adverse possession of the land, and by way of cross-action interposed a plea in trespass to try title against the appellant in which he further asserted title by ten year limitations and in connection therewith alleged that at all times material to this controversy the appellant, his predecessors in title, and all the respective owners of the lands adjacent to the tracts in controversy, had acquiesced in and agreed upon the boundary line and fence enclosing the land in controversy within appellee's enclosures as the true and correct boundary line between the adjoining tracts of land.

The appellant recovered judgment for the title and possession of the 5 acres in Survey 12, and for $16.92 rentals thereon, but was denied a recovery for the 29 acres in Survey 19 and rentals thereon, the appellee having prevailed on his plea of peaceable and adverse possession of such land for a period of ten years. From this judgment this appeal is prosecuted. The complaint herein is only with reference to the court's refusal to render judgment for the appellant for the 29 acres in Survey 19, together with rentals thereon.

It was agreed between the parties that J. P. Carr was the common source of title and that $1 per acre per year was the reasonable rental value of the land which is the subject of this controversy. In 1907 J. P. Carr became the owner of Surveys 11, 12, 19 and 20 of the Sabine County School Lands, aggregating 2300 acres, situated in Hale County, Texas. These four surveys formed a rectangle, Surveys 20 and 11 being respectively north of Surveys 19 and 12, Survey 20 being the northwest tract of the rectangle, Survey 11 being the northeast tract, and Surveys 19 and 12 being respectively the southwest and southeast tracts of the body of land. All four surveys have a common corner in about the center of the rectangle. The two north tracts, 20 and 11, contain 574.4 acres each, and the two south tracts, 19 and 12, contain 575.6 acres each.

J. P. Carr and wife by two deeds, one dated March 16, 1914 and the other December 19, 1922, conveyed to their son, H. R. Carr, all of Survey 20 and the north 422 varas of Survey 19, aggregating about 700 acres of land. By two deeds both dated April 16, 1932, H. R. Carr conveyed the land mentioned to the appellee, Walice Bogart. By deed of December 17, 1930, J. P. Carr conveyed to Roy Irick all of Survey 11 and the north 422 varas of Survey 12, aggregating also about 700 acres of land. Irick on March 24, 1931 conveyed the latter 700 acres to the appellee. Therefore, since April 16, 1932, the date of the conveyances from H. R. Carr to the appellee, the appellee has been the record owner of the north 1400 acres of the four surveys of land. Also, on December 17, 1930 J. P. Carr conveyed to Roy Irick the remainders of Surveys 19 and 12 constituting about 900 acres of the original four surveys and containing all the land of the four tracts not included in the north 1400 acres conveyed to the appellee in the deeds

above mentioned. On September 8, 1932 Irick conveyed the south 900 acres of Surveys 19 and 12 to L. P. Jeffreys, who on May 16, 1935 conveyed such land to the appellant, G. J. Catching. Since the latter date the appellant has been the record owner of the south 900 acres of the four surveys. In all of the deeds above mentioned the division line between the north 1400 acres and the south 900 acres of the four surveys was recognized as being 422 varas south of the south boundary lines of Surveys 20 and 11.

The controversy herein has arisen by virtue of an old fence which is not situated on the boundary lines indicated in the deeds. Instead of beginning at a point in the west line of Survey 19, 422 varas south of the southwest corner of Survey 20, as specified in the deeds heretofore mentioned, the fence actually begins at a point 146.8 varas south thereof and runs eastward across Surveys 19 and 12 crossing the division line indicated by the deeds at a point in the northeastern portion of Survey 12, and ending at a point in the east line of Survey 12 which is 33 varas north of the northeast corner of appellant's lands as indicated in the deeds. This discrepancy in the fence line with the boundary line shown in the deeds has the effect of including 29 acres of Survey 19 and 5 acres of Survey 12, not included in appellee's deeds, within the enclosure of appellee's lands. This discrepancy also has the effect of including an acre, more or less, in Survey 12 of appellee's land within appellant's enclosure not indicated in the deeds, but to which small portion the appellant makes no claim. For many years before J. P. Carr sold any of the property adjacent to the fence he owned the land on both sides of the fence in question and during such period the position of the fence was, perhaps, an unimportant factor. The fence was admittedly more than twenty years old and no issue is presented as to the possession by appellee, and those under whom he claims, of the 29 acres of land in Survey 19 for the required length of time under the ten year statute but the chief controversy is whether or not such possession was adverse as to the appellant and those under whom he claims. The jury found in response to Special Issue No. 1 that the appellee and those under whom he claimed had had and held continuous, peaceable and adverse possession of all the land in controversy, including the 29 acres which

is the subject of this appeal, for a term of at least ten consecutive years prior to the filing of this suit on April 9, 1938. By virtue of this finding the court rendered judgment for the 29 acres of Survey 19, but did not render judgment for the appellee for the 5 acres in Survey 12, which was admittedly by reason of the fact that Roy Irick owned both Surveys 11 and 12 during part of the ten year period and thus could not claim limitations as to the 5 acres in Survey 12 as against himself. As above stated, it was not until March 24, 1931 that Irick conveyed to the appellee the land in Survey 11 adjacent to the 5 acres of Survey 12 in controversy and therefore the appellee had not possessed the 5 acres of Survey 12 for a period of ten years nor was the possession theretofore of Irick such as that it could have been adverse since he owned the land in Surveys 11 and 12 on both sides of the fence in question.

In several propositions the appellant attacks the judgment relative to the 29 acres by reason of the alleged insufficiency of the testimony to show such adverse possession as is necessary to recover under the ten year statute.

■ In this connection the appellant asserts that the court should have given a peremptory instruction in his favor by reason of some testimony relative to negotiations between the parties about moving the fence back to the line called for in the field notes in the deeds. These negotiations occurred partly at about the time the suit was filed and partly soon thereafter, and long after the ten year period of limitations, if any, had accrued, and, in our opinion, amounted to no more than an effort to compromise the controversy.

■ The testimony shows that at the time of the trial J. P. Carr was deceased and that H. R. Carr was without the State of Texas. Therefore, the testimony as to the adverse possession is partly circumstantial as far as H. R. Carr is concerned, but we think the testimony as a whole is sufficient to support the finding of the jury on adverse possession for ten years so far as the 29 acre tract in Survey 19 is concerned. The record shows, as above stated, that H. R. Carr acquired title to the balance of the north 700 acres of Surveys 20 and 19 from his father in 1922. Although his deed did not include the 29 acres in controversy the fence at

that time enclosing the southern boundary of ·his land did include the 29 acres. The testimony shows that after 1922 H. R. Carr possessed and used not only the 700 acres included in his deed but also the 29 acres within his fence. During all the time thenceforth the 29 acres were possessed, used and occupied as a unit with the 700 acre tract north thereof, and such tract was so used by H. R. Carr until he sold it to the appellee since which time the appellee has exercised the same sort of use and occupancy.

Truett Pool, a brother-in-law of H. R. Carr, testified that in the spring of the year 1929 he moved on the land north of the fence as the tenant of H. R. Carr and that previous thereto H. R. Carr had worked the land himself. When H. R. Carr sold the land, Pool then became the tenant of the appellee in which capacity he has since remained. At the time he became H. R. Carr's tenant in 1929, J. P. Carr owned the land south of the fence which was later conveyed to Irick and from Irick to Jeffreys and from Jeffreys to the appellant. At no time during his tenancy of the land, including the 29 acres in controversy, did Pool pay any rent to J. P. Carr, Roy Irick, L. P. Jeffreys or the appellant, nor did they make any claims upon him for any rents. On the contrary the rent was paid to H. R. Carr while he owned the 700 acres and thereafter to the appellee.

The witness N. C. Hix, banker and real estate dealer who assisted H. R. Carr in the sale of the 700 acres to the appellee, testified that it was understood between the parties that the land being conveyed extended to the fence and that the fence was pointed out to the appellee as the southern boundary line. In this connection, incidentally the deed conveying the land adjacent to the land in controversy contained a recitation that "the Fence of the SouthSide of said lands is conveyed to Grantee, * * * ". This witness also testified that as far back as 1924 he was on the land and that J. P. Carr pointed out this particular fence as being the boundary line. At this time in 1924 H. R. Carr had some sheep on the land north of the fence which land at that time was in grass. Hix was familiar with the land and not only knew that J. P. Carr and H. R. Carr recognized the fence as the boundary line but further knew that Irick and Jeffreys used only the land south of such fence at the

time they each owned the land now owned by the appellant.

W. A. Richter, agent for the Abernathy National Farm Loan Association, took an application for a loan from J. P. Carr in 1924 upon the land in Surveys 11 and 12. At such time, in company with J. P. Carr, ·he made an inspection of the land and the latter showed him the fence in question as being the south line of the lands upon ·which· the loan was made. There is not any testimony in the record to show that any of the owners of any of the lands involved, prior to the time appellant purchased his land, ever had any knowledge that the fence in question was not the division line between the lands, and so far as the record shows such knowledge was only obtained by the appellant upon his having the land surveyed in 1937 by the County Surveyor of Hale County, which was some two years after the appellant purchased his land in 1935. Under all the facts and circumstances of this case it is our opinion that the testimony was sufficient to support the finding of the jury on the issue of adverse possession in favor of the appellee as set out above. McAnnally et al. v. Texas Co. et al., 124 Tex. 196, 76 S.W.2d 997; McCabe et al. v. Moore, Tex.Civ.App., 38 S.W.2d 641; Jobe et al. v. Osborne et al., 128 Tex. 509, 97 S.W.2d 939; Foster et ux. v. Persinger, Tex.Civ.App., 30 S.W.2d 378, writ refused; Craig v. Cartwright, 65 Tex. 413; Thompson et al. v. Richardson, Tex.Com. App., 221 S.W. 952; Cox et al. v. Sherman Hotel Co., Tex.Civ.App., 47 S.W. 808; Boy et al. v. McDowell, Tex.Civ.App., 207 S.W. 937; Young v. City of Lubbock, Tex.Civ.App., 130 S.W.2d 418.

The court submitted to the jury Special Issue No. 2, which was as follows: "Do you find from the preponderance of the evidence that the fence in question had been recognized by those who owned the land now owned by the plaintiff prior to the time he acquired the same, and those who owned the land lying North of Plaintiff's land, as the division and boundary line between their said lands." This issue was answered in the negative. The appellant asserts that such finding conflicts with the finding of adverse possession in the first issue and therefore presents fundamental error in the judgment rendered. It is our opinion that this finding was only to the effect that there was not an agreed boundary line between the respective prop-

erty owners and is not determinative of the issue of adverse possession. Moreover, it was an issue in keeping with the defensive pleading of the appellee wherein he alleged that the fence had been recognized by the various owners as the division line between their respective lands. The appellant contends that the answer is a finding that the appellee and his predecessors in title and possession did not claim the fence. as the boundary line. We hardly think such a construction is a reasonable one under the pleadings and facts of this case. Under the language of the issue all of the respective owners prior to the appellant's purchase of his land would have had to recognize the fence as the boundary line before the jury would have been warranted in answering the question in the affirmative. In other words, if all of the owners of the land north of the fence had recognized the fence as the line and only one or more of the owners of the land south of the fence had failed to do so, still the jury would necessarily have been compelled to answer the issue in the negative. In our opinion, the issue, as framed and answered, does not negative the contention of the appellee that he and his predecessors so recognized the fence as the boundary line. If the issue finds any fact at all, it simply establishes the failure of the respective owners of the land on each side of the fence to agree upon the fence as the line of demarcation between their lands. It certainly does not destroy appellee's theory of adverse possession nor the jury's finding thereon.

The appellant requested special issues as to whether or not H. R. Carr claimed the land in controversy by adverse possession as against his parents prior to the time J. P. Carr conveyed to Roy Irick the south 900 acres of Surveys 19 and 12. The court refused these issues and the appellant assigns such action as error. This particular matter, we think, was embraced in Special Issue No. 1 and its answer. In that issue the jury found, in effect, that H. R. Carr had held adverse possession of the land as against his parents and everyone else during whatever portion of the ten year period before April 9, 1938 that H. R. Carr occupied the land. The court was therefore not required to submit the same subject matter again to the jury, especially in the absence of any evidence that the possession of H. R. Carr as against his parents was any less adverse than that against all others.

The appellant further asserts that the court erred in refusing his request for the submission of an issue as to whether H. R. Carr abandoned his adverse claim to the land in controversy when he moved from the land in 1929 and placed a tenant in possession. We have searched the record and failed to find such an issue prepared and tendered to the court, such request having been made in appellant's objections to the court's charge wherein, in effect, he requested the court to prepare and submit such an issue. If such request was sufficient there was no evidence raising the issue. The testimony does show that H. R. Carr moved to New Mexico some time about 1929, but his tenant, Truett Pool, thereupon moved upon the land, possessed and occupied the same for his landlord, H. R. Carr, and paid all rents to the latter until H. R. Carr sold the land to the appellee in 1932. We think it is elementary that one may claim adverse possession through his tenant without being bodily present upon the land.

We have examined all the assignments and propositions of the appellant and we think what we have said disposes of all of them. We find no reversible error in the record and the judgment of the trial court will be affirmed.