## LION OIL REFINING CO. et al. v. WHITE.

### No. 5463.

Court of Civil Appeals of Texas. Texarkana.
March 23, 1940.

Rehearing Denied March 28, 1940.

Thompson, Mitchell, Thompson & Young, W. K. Koerner, and C. A. Brown, all of St. Louis, Mo., A. E. Groff, of Houston, and H. P. Smead, of Longview, for appellants.

Wynne & Wynne and Henry H. Harbour, all of Longview, for appellee.

JOHNSON, Chief Justice.

This suit was filed by appellee, Charles B. White, against Lion Oil Refining Company, Shell Petroleum Corporation, Glengarry Oil Company, C. D. Evans, W. G. Winder, John R. Williams, Elizabeth Williams, individually and as community survivor of the estate of herself and John R. Williams, a person of unsound mind, N. E. Williams, as trustee and guardian of said lunatic, John R. Williams. Plaintiff's second amended original petition on which he went to trial alleges a statutory action of trespass to try title to approximately ten acres of land, a part of the P. McAnally Survey in Gregg County. The petition specially alleges that the plaintiff and those under whom he claims acquired title by adverse possession under the statute of ten years' limitation, R. S. Article 5510. The answers of the defendants contain general denial, pleas of not guilty, and specially plead the ten years' statute of limitation, Article 5510; and in the alternative, an outstanding ten years' limitation title in

T. B. Stinchcomb. By supplemental petition plaintiff alleged that the statute of limitation pleaded by defendants was suspended by reason of plaintiff's minority.

Trial of the case was to a jury. At the close of the evidence plaintiff and all defendants moved for directed verdicts in their favor. The court sustained plaintiff's motion and entered judgment for plaintiff upon the verdict rendered as directed. Defendants appealed. Pending the appeal a settlement of all matters between Lion Oil Company and Shell Petroleum Corporation and appellee, Charles B. White, was had and by agreed motion the appeal as to said appellants was dismissed.

Appellants complain of the action of the trial court in directing a verdict for appellee and in refusing to direct a verdict for appellants. Neither appellee nor appellants claim any record title to the land. Each claims to have acquired title under the ten years' statute of limitation. Appellee claims that his grandfather, B. F. (Ben) White, from whom appellee claims to have inherited, was in adverse possession of the land from 1900 to 1917, and thus acquired title. Appellants claim that Ben White, if he did so acquire title, has been divested of such title by the subsequent adverse possession of appellants and those under whom they claim, under the statute of ten years' limitation. There does not appear to be any conflict in the testimony as reflected by the briefs of both parties. The controlling questions presented are questions of law, namely: (1) Does the undisputed evidence show that Ben White acquired title to the ten acres by adverse possession under the ten years' statute of limitation; and, if so, (2) does the undisputed evidence further show that Ben White later lost that title by the subsequent adverse possession of appellants and those under whom they claim, under the ten years' statute of limitation.

On January 1, 1900, G. B. Turner executed a deed to B. F. (Ben) White describing by metes and bounds approximately eighty acres of land, on which was a dwelling house and other improvements. The ten acres in question (not described in the deed) adjoins the eighty acres on the south. At the time said deed was executed and prior thereto (since 1884) the eighty acres and the ten acres were enclosed under one fence as one farm. All the ten acres and a considerable portion of the eighty acres were in cultivation each and every year from long prior to 1900 to and including 1932. There was no fence or markings of any character separating the ten acres from the eighty acres. The ninety acres were enclosed as one tract of land. Upon receiving his deed Ben White went into possession of the entire farm, consisting of the ten acres and the eighty acres. White lived on the farm and cultivated it until 1909, when he moved to Palestine and rented it to Lynn Jones who moved in while White was moving out. Lynn Jones as White's tenant occupied and cultivated the farm until White sold to Wilson Whitaker. The deed from Ben White to Wilson Whitaker is dated November 8, 1917, and describes the same land (the eighty acres) as described in the deed from Turner to White. Upon receiving his deed Whitaker went into possession of the entire farm, in February, 1918. He moved in as Jones was moving out. Jones testified that while he was living on the farm he decided to buy it from White, and for that reason he employed a surveyor to survey it for him, and that the surveyor surveyed it according to the field notes describing the eighty acres. It is not shown that White knew of this survey. Jones further testified that after Whitaker had bought the farm he, Jones, showed Whitaker where the surveyor had surveyed the lines of the eighty acres. Whitaker continued to occupy and cultivate the land, the eighty and the ten acres, as one farm, from 1918 to 1928, inclusive. He sold to B. Feagle by deed dated February 3, 1925, but continued to occupy and cultivate the farm as a tenant of Feagle to whom he paid the rents. Feagle sold to T. B. Stinchcomb April 25, 1928, and Whitaker continued to occupy and cultivate the farm as the tenant of Stinchcomb to whom he paid the rents. Stinchcomb sold to John R. Williams October 15, 1928. The deeds from Whitaker to Feagle and from Feagle to Stinchcomb and from Stinchcomb to Williams each describes the same land (eighty acres) as described in the deed from Turner to White and from White to Whitaker. After receiving his deed, John R. Williams went into possession of the farm. He moved in sometime in December, 1928, as Whitaker was moving out. Williams continued to occupy and cultivate the farm from 1928 to 1932, inclusive, when oil was discovered on it. The other appellants claim mineral interests under Williams. So it appears that the enclosed farm (ten and eighty acres) was occupied and cultivated continuously by the respec-

tive claimants either in person or by tenants during all times material to this lawsuit, and under circumstances raising the inference that each claimed it adversely to the world during his occupancy. There is no circumstance to the contrary.

■ We think the evidence conclusively shows that Ben White acquired title to the ten acres by his adverse possession from 1900 to 1917, and that he was divested of such title by the subsequent adverse possession from 1917 to 1932 of the appellants and their predecessors.

Appellee contends that no privity of possession is shown between appellant John R. Williams and his predecessors in title, necessary to take the successive possessions under the statute of limitation. Neither John R. Williams nor any one of his predecessors held continuous possession for a period of ten consecutive years, but we think the facts above recited under which they successively entered and occupied the land, in the absence of any circumstances to the contrary, conclusively show the required privity of possession between each of them. Similar, and less cogent facts were held sufficient to establish the necessary privity for tacking the successive possession of the various claimants in McAnally v. Texas Company, 124 Tex. 196, 76 S.W.2d 997.

■ Appellee further contends that the evidence does not show that the possession of John R. Williams' predecessors was adverse. We do not sustain that contention. In Hartman v. Huntington, 11 Tex.Civ.App. 130, 32 S.W. 562, 563, the rule here applicable is expressed in the following language: "The question whether or not a possession is adverse to the owner of the land is mainly one of fact. If a particular holding is adverse in law, it is so because it is adverse in fact, and all that is necessary in order to reach a correct decision of such a question is to give to the facts in evidence their proper effect, and to determine just what they prove. Ordinarily, when a person in possession of land is shown to have used and enjoyed it as owners of lands usually do, the natural inference is that his possession was taken and held for himself as owner, and that it was 'therefore inconsistent with and hostile to the claim of another.' This inference prevails unless something else is shown to qualify and explain the possession."

■ Referable to appellee's plea of minority, it appears that Ben White died February 2, 1926. Appellee was born April 2, 1912, therefore he was a minor when Ben White died, but limitation had begun to run against Ben White prior to his death, hence was not suspended because of appellee's minority. 28 Tex.Jur. 240, Sec. 141.

■ Appellee contends that the judgment against John R. Williams, Elizabeth Williams, individually and as community survivor of the community estate of herself and John R. Williams, a person of unsound mind, and N. E. Williams, trustee and guardian of said John R. Williams, a person of unsound mind, should be affirmed because said appellants failed to file a brief in this court. The brief for appellants filed in this court is signed by some, but not all the attorneys for appellants. It is not signed by the attorneys who represented the above-named appellants in the trial court. It is designated "Brief for Appellants" and the assignments of error are headed, "Appellants assign the following as errors. * * *" But it is not necessary to decide the question as to whether the brief so addressed to this court as "Brief for Appellants" was intended for the benefit of all the appellants. The two controlling questions that were presented by the brief were of such nature as that their determination necessarily applied to all the appellants alike. We think that in such circumstances, referable to the particular appellants not filing briefs, said questions may be regarded as fundamental error. Egan v. Lockney Farmers' Co-op. Soc., Tex.Com.App., 284 S.W. 937.

The judgment of the trial court will be reversed, and judgment here rendered that appellee, Charles B. White, take nothing.

### On Motion for Rehearing.

Upon request of appellee, we express the additional finding that the appellants, "John R. Williams (an insane person), Elizabeth Williams (wife of said John R. Williams), individually and as community survivor of the estate of herself and said John R. Williams, and N. E. Williams, as trustee and guardian of said John R. Williams," never filed any appeal bond. This fact does not, in our opinion, affect the disposition originally made of the case.

Motion for rehearing is overruled.