**PIERCE ESTATES, Inc., et al. v. HOWARD et al.**

No. 2980.

Court of Civil Appeals of Texas. Beaumont.

Dec. 31, 1936.

Rehearing Denied Jan. 13, 1937.

Andrews, Kelley, Kurth & Campbell, of Houston, for appellants.

E. B. Pickett, Jr., and Hightower & Daniel, all of Liberty, for appellees.

O'QUINN, Justice.

This suit was brought by appellees as the heirs of T. T. Howard against appellants in trespass to try title to recover a tract of 400 acres, more or less, a part of the Joseph Dunman league of land in Liberty county, Tex. In addition to the ordinary and usual allegations in suits of trespass to try title, appellees asserted title to the land by virtue of the five and ten year statutes of limitation (Vernon's Ann. Civ.St. arts. 5509, 5510).

Appellants answered by general demurrer, general denial, and plea of not guilty. They also pleaded title under the three, five, ten, and twenty-five year statutes of limitation (Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519), and certain special pleas not necessary to mention.

The case was tried to the court without a jury, and judgment rendered in favor of appellees awarding to them the land in question, and denying to appellants the relief prayed by them. We have the case on appeal.

The land involved is a portion of the west end of the Joseph Dunman league, and borders on the Trinity river on the west, and, while stated to be 400 acres more or less, in fact is about 361½ acres. There is a map or plat in the record showing the west end of the Dunman league, and its several subdivided tracts. Also delineating the Trinity river, a stream known as the Self's bayou and another called the Cut-off, and a small lake. The river and Self's bayou and the Cut-off, as shown on the map, have numerous bends, curves, and windings, almost crossing themselves and each other at several points. Because of its size and perplexing and pestersome bends and curves of the streams, shown on it, we will not undertake to reduce the scale of measurements and reproduce the map.

The league of land of which the tract involved is a part was patented to Joseph Dunman by the state of Texas on April 24, 1831. The several tracts or portions of the Dunman league herein mentioned were, at various dates, conveyed by warranty deed to the several grantees by Jerome De Blanc. There is nothing in the record showing conveyance to De Blanc, but no point is made against his having title. The record discloses that the courthouse in Liberty county was burned in 1874 when all deed records were destroyed. This perhaps accounts for no deed to De Blanc now appearing of record.

On October 12, 1878, Jerome De Blanc and his wife, Irena De Blanc, by warranty deed conveyed to A. G. McCormick and his wife, Catherine McCormick, a portion of the Dunman league described as follows:

"All that certain piece or parcel of land lying and being in the county of Liberty and State of Texas, lying on the east bank of the Trinity River, above Moss Bluff and known as the DeBlanc pasture, the same being a part of the front on the river of the Joseph Dunman league and more definitely described and bounded as follows, to-wit:

"Beginning at the southwest corner of said Dunman league on the bank of the river the same being the northwest corner of the Netherly Survey.

"Thence up the said river with its meanderings to the point where a fence joins the river.

"Thence with said fence eastwardly to a lake in the bottom.

"Thence with or across said lake to a fence which connects said lake with or to the stream known as the Cut-off.

"Thence down said stream or Cut-off with its meanderings to the junction of said Cut-off with Self's Bayou.

"Thence down said Self's Bayou with its meanderings to the point where the south line of said Dunman Survey crosses said Self's Bayou.

"Thence with said south line of said Dunman Survey south 88 W. to the place of beginning, containing 400 acres of land, more or less as the case may be."

This is the land in question.

February 4, 1880, McCormick and wife by warranty deed conveyed this land by the same metes and bounds to Thomas T. Howard, and in said conveyance made special reference to the deed from De Blanc and its record. T. T. Howard was never married, and died intestate. The appellees are the heirs of T. T. Howard, and as such asserting title to the land.

Appellants base their claim to the land upon the following facts:

(a) April 2, 1883, Jerome De Blanc, for a valuable consideration, by warranty deed, conveyed to Thomas T. Howard a portion of the Joseph Dunman league of land, described as follows:

"All and singular the tract of land now belonging to me lying between Self's Bayou and the Trinity River more particularly described as follows:

"Beginning at a point on the east bank of Trinity River at the southwest corner of the T. T. Howard's Survey from which a sycamore 10 inches in diameter marked X bears N. 89½ E. 4 vrs. distant.

"Thence along Howard's S. line in a northeasterly direction 2320 vrs. to the S. E. corner of said Howard's survey.

"Thence in a northerly direction along said Howard's E. line 475 vrs. to the N. E. corner of said Howard's Survey on the north line of the Joseph Dunman league. Thence along said league line to the west bank of Self's Bayou. Thence following the meanders of Self's Bayou in a southerly direction to the junction of said bayou and a stream known as the Cut-off.

"Thence following the meanderings of said Cut-off to a fence running from said Cut-off to a lake in the bottom.

"Thence along said fence to said lake.

"Thence along said lake or over it to a fence running to the Trinity River.

"Thence in a westerly direction along said fence to the east bank of the Trinity River.

"Thence following the meanders of the Trinity River to the place of beginning, containing 132 acres more or less, and being a part of the Joseph Dunman League located in the county of Liberty and State of Texas. The land hereintofore bounded and conveyed is intended to embrace all the land now owned by said Jerome De-Blanc on said league that is situated on the west side of Self's Bayou or between said bayou and Trinity River."

(b) Deed of trust from Thomas T. Howard to Hebert Austin dated November 2, 1895, covering the above-described tract of land for the purpose of securing the payment of a note owed by Thomas T. Howard, payable to Weeks, McCarthy & Coe of Galveston, Tex., in the sum of $7,500.

The 132-acre tract, more or less, mentioned in the deed of trust, was therein described:

"All and singular the land in said league lying between Self's Bayou and the Trinity River, more particularly described by metes and bounds as follows:

"Beginning at a point on the east bank of Trinity River at the southwest corner of Thomas T. Howard survey, from which

a sycamore 10 inches in diameter marked X bears north 89½ east 4 varas distant;

"Thence along said Howard's south line in a northeasterly direction 2320 varas to the southeast corner of said Howard's survey;

"Thence in a northerly direction along said Howard's east line 475 varas to the northeast corner of said Howard's survey on the north line of the Joseph Dunman league;

"Thence along said league line to the west bank of Self's Bayou;

"Thence following the meanderings of Self's bayou in a southerly direction to the junction of said bayou and a stream known as the Cut-off;

"Thence following the meanderings of said Cut-off to a fence running from said Cut-off to a lake in the bottom;

"Thence along said fence to said lake;

"Thence along said lake or over it to a fence running to the Trinity River;

"Thence in a westerly direction along said fence to the east bank of Trinity River;

"Thence following the meanderings of Trinity River to the place of beginning, containing 132 acres, more or less."

"Said land here bounded and conveyed is intended to embrace all of the land that is situated on the west side of said Self's Bayou or between said bayou and Trinity River, but out of this last named tract I have already sold before these presents 200 acres to one Henry Rembert."

(c) Thomas T. Howard died intestate some time prior to November 20, 1899, and on that date the probate court of Galveston county appointed A. E. Bush administrator of his estate. Bush qualified by taking oath and making bond, which was approved by the probate court of Galveston county. In the meantime A. H. Pierce became the owner of the Howard $7,500 note, and on April 4, 1900, by suit in the district court of Galveston county, recovered judgment against Bush, as administrator of the estate of Howard, for the amount due on the note, $5,704.30, and foreclosure of the deed of trust lien, the land being described in the proceedings and foreclosure judgment as in Jerome De Blanc's deed to Howard, and in Howard's deed of trust to Hebert Austin.

(d) Bush, administrator, on August 24, 1900, executed deed to A. H. Pierce, conveying him the land described in the deed of trust, as per order of the court approving the sale by Bush of said land under order of the court and approval of such sale. The description of the land in these proceedings was same as in deed of trust from Howard to Austin.

(e) All rights, title, liens, equities, and claims relative to the property in question that had belonged to A. H. Pierce had passed into and were held by appellant, Pierce Estates, Inc., a corporation.

The decisive question here is whether the deed from Bush, the administrator, to A. H. Pierce included the 400-acre tract of land in controversy. Appellant contends that it did, and appellee that it did not.

It must be kept in mind that the very tract of land in controversy was, as stated supra, deeded by De Blanc to McCormick in 1878, and by McCormick to Thomas T. Howard in 1880. There is no controversy as to the definiteness or correctness of the field notes describing this tract. There is no controversy as to the 132-acre, more or less, tract other than that by a general description in the deed from Bush, administrator of the estate of Thomas T. Howard to Pierce, the 400 acre-tract in controversy was included with the 132 acres described in the deed. After describing the land, call by call, as it was described in the deed of trust, down to the last call, it concluded: "Thence following the meanderings of the Trinity River to the place of beginning, containing 132 acres, more or less, the boundaries and description above given, being intended to embrace all the land situated on the west side of Self's Bayou, or between said bayou and Trinity River, except 200 acres thereof, sold by said Thomas T. Howard to Henry Rembert," and recites that said land is the same (132-acre tract) described in deed of trust of date November 2, 1895, and referred to the record thereof. We have set out above the description in the deed of trust. While the description of the land in the Bush deed to Pierce is not verbatim the same as that in the deed of trust given by Howard, the substance is the same, and we shall so treat it.

We think appellant's contention must be overruled. The 132-acre tract, more or less, was fully described by metes and bounds as set out supra. After the special description, there follows the general description just above set out. There

is no controversy but that the field notes first specifically describing the land are definite and certain, and by which the 132-acre tract, more or less, can be and was located on the ground, even shortly before the trial. In the construction of deeds, the universal rule is that the intention of the parties is to be ascertained, and, if not forbidden by law, given effect, and that construction which is most consistent with the intention of the grantor, as gathered from the terms of the conveyance, is to be accepted as controlling. We think it sure that here it appears that Thomas T. Howard, in executing the deed of trust on the 132-acre tract, intended to burden only the land within the boundaries set out by the field notes bounding same. Appellant insists that the descriptions in the deed do not refer to the same land, and argue that "in this case there is no conflict or repugnancy between the particular description in the conveyances and the other language of the description (general description) which evidences the intention of the parties that the conveyances should cover all the land west of Self's Bayou, or between said bayou and the river. There is no necessity for choice between the descriptions, and there is no reason for refusing to give effect to both." This contention is without force. The repugnance between the particular description and the general description is obvious. The particular description does not include all of the land on the west side of Self's bayou, nor all of the land between Self's bayou and the Trinity river, nor does the 'particular description include any part of the 400-acre (accurately 361½ acres) tract in controversy. The general description, if given the effect contended for by appellant, would enlarge the grant by 361 acres, irrespective of the metes and bounds distinctly set out in the conveyance.

Furthermore, we think it clear from the the general description itself that no such intention existed. The very words "thence following the meanderings of the Trinity River to the place of beginning, containing 132 acres, more or less, the boundaries and description above given, being intended to embrace all of the land situated on the west side of Self's Bayou, or between said bayou and Trinity River," considered, as they must be, in connection with the "boundaries and description above given," point to the very land described in the metes and bounds of the land in the con-

veyance, and to no other land. The words "boundaries and description above given" unerringly point to the same land described in the given.bounds, and cannot be given the effect of enlarging the grant and thus including 361½ acres of land wholly out of the "boundaries and description above given".

■ However, if it could be said that the general description, as contended by appellant, had the effect to enlarge the grant, still the conveyance cannot be given this effect, for then there would be a repugnancy between the particular description, and the general description, and the particular description being certain from which the location of the land may be ascertained, will control. Cullers v. Platt, 81 Tex. 258, 16 S.W. 1003; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W. (2d) 442; McAnally v. Texas Company (Tex.Civ.App.) 32 S.W.(2d) 947 (affirmed 124 Tex. 196, 76 S.W.(2d) 997).

But appellant says that "there is no necessity for choice between the descriptions (the particular and the general) and there is no reason for refusing to give effect to both." We think there are several reasons why this should not be done. (a) The undisputed facts deny any such interpretation. Howard purchased the 400-acre tract involved from De Blanc under specific metes and bounds not questioned. Likewise he purchased from De Blanc the 132-acre tract under specific metes and bounds which in no way conflict with or include any part of the 400-acre tract. The field notes of the two tracts sold by the same grantor, De Blanc, to the same grantee, Howard, have several common boundaries—the Cut-off, the lake, and the two fences named in the field notes. Each of these boundaries or lines are separating boundaries between the two surveys. We think it would be unlikely that Howard in defining the 132 acres, more or less, upon which he was executing· a deed of trust, intended by the general description following the specific description of the 132 acres, to include another and a specific tract of 400 acres, much more than he actually described as the 132 acres, when he held same under deed with accurate specific bounds, which lay wholly out of and independent of the 132 acre tract burdened with the lien. (b) The 400-acre tract in controversy is not to be confounded with a 400-acre tract included in the deed of trust. That was another

and different tract which lay east of the 132-acre tract, about which there is no controversy. Moreover, appellant, by the judgment, foreclosure, and sale, got not only his full 400 acres (the east tract) and 132 acres, or 532 acres, but considerably more for the 132 acres, more or less, tract contained within the field notes bounding same an excess of 189 acres, or 321 acres, to which it is here sought by construction to add 361½ acres more, or an excess of 550½ acres. It is unreasonable to suppose that such was intended by the parties. (c) Again, the 400-acre tract in controversy was known as the De Blanc pasture. It was inclosed by the Trinity river and the Cut-off and the lake, each shown to be such streams or bodies of water as to prevent stock from passing in or out, across or over same, and the two short fences completed the inclosure. The curves and windings of the river and cut-off were such as that at one point they approached within 46 varas of each other. It was used by De Blanc as a pasture, and so by his vendee, McCormick, and also by his vendee, Howard. There were improvements, including a house, erected on the land so that some of the land was used for occupancy, some for farming, and some for pasture for stock and other uses. Howard, of course, was familiar with the premises and the uses to which they were put, and we think that with his knowledge of the location, use, and extent of the different tracts it would be unreasonable to conclude that in executing the deed of trust on the 132-acre tract, after designating said tract by metes and bounds, he would gratuitously and intentionally, by the general description following the specific field notes, add 361 acres more—the tract in controversy. (d) And, too, the deed of trust, on its face, clearly shows that but two tracts—one of 400 acres and another of 132 acres—were to be included, not three tracts—not a third tract of 361½ acres in no wise designated or described. To adopt appellants' construction of the description of the land in the conveyance of the 132-acre tract would be to include a larger tract of land than that covered by the deed of trust, which was a separate and distinct tract in no way mentioned or described in the instrument.

The judgment is affirmed.