**REYNOLDS et al. v. CITY OF ALICE et al.**

**No. 4048.**

Court of Civil Appeals of Texas. El Paso.
Sept. 19, 1940.

On the Merits March 27, 1941.

Rehearing Denied April 24, 1941.

L. D. Griffin, of Alice, and M. E. Jenkins, of Aguanga, Cal., for appellants.

Frank T. Morrill, Perkins & Floyd, and C. W. Perkins, all of Alice, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of Jim Wells County. Appellants' motion is to strike from the transcript a certified copy of the minutes of the District Court of Nueces County relating to the election by the Bar and qualification of the Honorable John E. Lyle as Special District Judge of the 117th Judicial District, and a certain letter written by Judge Lyle to Miss Beula E. Richardson, District Clerk of Nueces County, requesting that she include in this transcript a certified copy of the minutes of the District Court of Nueces County re-

lating to his election by the Bar as such Special District Judge.

At all relevant times herein Honorable L. Broeter was the duly elected and qualified Judge of the 79th Judicial District and also Presiding Judge of the 5th Administrative Judicial District. Judge Broeter deemed himself disqualified to try this case. In compliance with a request that a judge be designated to try the case, as Presiding Judge of the Administrative District, he designated in an order the Honorable Cullen W. Briggs, Judge of the 117th Judicial District, to try this case on March 4, 1940, or at such time during the March term of the District Court of Jim Wells County as was convenient.

On the 4th day of March, 1940, it is shown by the assailed certified copy of the minutes of the District Court of Nueces County that, through absence from the District, the Honorable Cullen W. Briggs was unable to preside over the District Court of Nueces County on the 4th day of March, 1940; that proclamation was made by the sheriff, and the Honorable John E. Lyle was elected Special District Judge of the 117th Judicial District, and thereupon he took the oath of office as such. This took place in the courthouse of Nueces County, and the proceedings seem to have been regular.

█ In our opinion, it is fundamental that the letter assailed had no place in the transcript. It is no part of the record, and there is no authority for including same therein.

The question then arises on this motion: Did the election of the Special District Judge by the lawyers in attendance on the District Court of Nueces County give full authority to perform any and all judicial functions in any judicial district in the State which the regularly elected and qualified Judge of the 117th Judicial District could have performed?

█ Articles 1887 to 1892, R.S.1925, Vernon's Ann.Civ.St. arts. 1887–1892, provide for the election of a special judge and the manner of the conduct of such election. The selection of the Honorable John E. Lyle as Special District Judge for the 117th Judicial District conferred authority on him to hold the term, or part of term, then current, of the District Court of Nueces County. This was the extent of his authority. Wynn v. R. E. Edmonson Land & Cattle Co., Tex.Civ.App., 150 S.W. 310; League v. Brazoria County Road Dist., Tex.Civ.App., 187 S.W. 1012; State v. Guardian Foundation of Texas, Inc., Tex.Civ.App., 112 S.W.2d 806, citing 25 Tex.Jur., p. 325, par. 76, and Note 2, p. 327. As having bearing on the matter, see, also, Articles 2278 and 2281, R.S.1925, Vernon's Ann.Civ.St. arts. 2278, 2281; Rules Nos. 84 and 85 for the District Courts of Texas; Freeman v. Anderson, Tex.Civ.App., 119 S.W.2d 1081.

The motion is in all things sustained, and said instruments are ordered stricken from the transcript.

### On the Merits.

This is an appeal from the judgment of the District Court of Jim Wells County. Plaintiffs were Mayme Nayer Reynolds and her husband, E. A. Reynolds; defendants, City of Alice, Joe W. Johnson, and Jimmie Lynn Post No. 186, American Legion. The action was in form of trespass to try title, trial before Honorable John E. Lyle, Jr., as Special Judge, and was without a jury, judgment that plaintiffs take nothing. Plaintiffs have perfected this appeal from the judgment.

The parties will be designated as they were in the trial court.

Plaintiffs contend that the Honorable John E. Lyle, Jr., was without power or authority to try the cause, hence the judgment is void and should be reversed.

Before entering upon the trial the parties to this appeal entered into the following written agreement: "The parties to the above entitled and numbered cause, by their attorneys of record, hereby agree that this cause shall be tried by the Honorable John E. Lyle, Jr., a practicing attorney of Corpus Christi, Nueces County, Texas, in lieu of Honorable L. Broeter, the regular District Judge of this District, who has certified his disqualification on account of being a citizen and taxpayer of the City of Alice, one of the defendants in this cause."

Judge Lyle took the oath of office as Special District Judge. All parties proceeded to the trial under this agreement without protest until after the judgment was rendered in the case.

Section 11, of Article 5, of the State Constitution, Vernon's Ann.St. is in part as follows:

"When a judge of the District Court is disqualified by any of the causes above stated, the parties may, by consent, appoint a

proper person to try said case; or upon their failing to do so, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law.

"And the District Judges may exchange districts, or hold courts for each other when they may deem it expedient, and shall do so when required by law."

This provision by its very terms conditions the appointment of a special judge by agreement of the parties upon the disqualification of the district judge.

■ There is no room for construction here, the literal terms must be followed. Bailey v. Triplett Bros., Tex.Civ. App., 278 S.W. 250; Summerlin v. State, 69 Tex.Cr.R. 275, 153 S.W. 890; Compere v. Girand, Tex.Civ.App., 42 S.W.2d 278.

However, if there be a disqualification and the parties agree upon a special judge, the power so to do is given in clear and unequivocal terms. It is held that if the judge deems himself disqualified and so certifies, and the parties proceed to trial before a special judge upon whom they have agreed, they are estopped to question the fact of disqualification. Ford v. First Nat. Bank of Cameron, Tex.Civ.App., 34 S.W. 684.

The matter would seem to be very clear here, unless the right to agree upon a special judge is in some way limited by the facts appearing in the record which we shall now narrate.

The Honorable L. Broeter was Judge of the 79th District, of which Jim Wells County is a part, and likewise Presiding Judge of the Fifth Administrative District of Texas, in which Jim Wells County is also situated. On the 24th day of February, 1940, as Judge of the 79th District, he noted on the docket of the District Court of Jim Wells County his disqualification to try this cause, and as Presiding Judge of the Fifth Administrative District designated and appointed the Honorable Cullen W. Briggs, Judge of the 117th Judicial District, to try this cause. Judge Briggs by the order was authorized and instructed to proceed to Jim Wells County, Texas, as of March 5, 1940, or at such time during the week beginning Monday, March 4, 1940, as was convenient and agreeable, to dispose of this cause.

Authority for the action taken by the Presiding Judge is referable to Article 200a, Vernon's Annotated Civil Statutes. Section 5 of that Article is as follows: "Judges may be assigned in the manner herein provided for the holding of district court when the regular judge thereof is absent or is from any cause disabled or disqualified from presiding, and in instances where the regular district judge is present or himself trying cases where authorized or permitted by the Constitution and laws of the State."

The fact relied upon to give authority to the action taken is the disqualification of Judge Broeter.

It is to be presumed, we think, that Judge Broeter was present during the February term of the District Court of Jim Wells County conducting the business thereof. This, of course, would have been no reason why Judge Briggs should not have tried the cause. Likewise, this fact presented no valid reason why, if properly selected, Judge Lyle should not have tried the cause.

The order of the Presiding Judge of the Administrative District did not constitute Judge Briggs Judge of the 79th District. Had he tried the cause, his powers with reference thereto would have been equivalent, we think, to the powers of the regularly elected, qualified and acting district judge, had he not been disqualified to try the case.

We think it fair to assume that Judge Briggs did not appear to try the case. Had he appeared a different and rather difficult question would be presented.

■ Judge Broeter being present and presiding over the court, there was no power of election by the Bar of a special judge. The purpose of the selection of a judge in this manner is to prevent the failure of a term. Warner v. Buckley, Tex. Civ.App., 42 S.W.2d 116.

The situation in which the parties to the litigation were placed was this: The term was about to expire, the judge presiding over the court was disqualified to try the cause; a judge from another district who would have had perhaps the power to try the cause was not available.

■ We think that, under authoritative precedent, Sec. 5 of Article 200a, relating to the assignment of district judges to preside over a court of another district, is merely cumulative of other statutes on the same subject. See Moore v. Davis, Tex. Com.App., 27 S.W.2d 153, 32 S.W.2d 181,

the same case in Court of Civil Appeals, 16 S.W.2d 380; White v. State, 110 Tex. Cr.R. 206, 7 S.W.2d 1086.

Manifestly, by legislative act, the power conferred by the section of the Constitution we have quoted above could not be limited.

We think, indulging all applicable and proper presumptions, that the right of the parties to agree upon and conduct their trial before a special judge selected in pursuance of their agreement is clear. The assignments of the plaintiffs relating to this matter are overruled.

As has been before stated, plaintiffs' action was in trespass to try title; sought recovery of five tracts of land in the City of Alice, Texas. These tracts lay to the north of the north boundary line of the Texas-Mexican Railway right-of-way. Of four of these tracts the north boundary line was described as the south boundary line of San Diego Street; their south boundary line as the north boundary line of the Texas-Mexican Railway right-of-way. Each of the four tracts was, north and south, 51 feet; east and west 305 feet. The four tracts lay between South King on the west and South Almond on the east. The fifth tract lay a short distance east of the fourth tract described. It lies north of the south boundary of the right-of-way of the Texas-Mexican Railway, extends east to the south boundary line of South Cameron Street, extends north along the west boundary line of that street 109.2 feet to the intersection of the south boundary line of Main Street, thence west along the south line of Main Street 300 feet to the intersection of the south boundary line of Main Street with the east boundary line of South Almond Street, thence south to the place of beginning.

Defendants pleaded not guilty, general denial, and the three, five, ten and twenty-five years' statutes of limitations.

Plaintiffs pleaded in abatement to the pleas of limitation urged by the defendants. This plea was overruled by the court. Plaintiffs assign error to this action of the court. In this we think there was no error. While it is styled a plea in abatement, it would, perhaps, more properly be denominated as an exception to the defendants' pleading.

A municipal corporation may urge the statute of limitations as a defense. 2 Tex.Jur. page 56, Sec. 30.

Furthermore, there is no showing in the record that the court found for defendants on the defense of limitation.

Findings of fact and conclusions of law were not sought by either of the parties, and none appear in the record. In this state of the record all presumptions are in favor of the judgment of the trial court, and same must be affirmed unless plaintiffs demonstrate the incorrectness thereof.

Plaintiffs claim as the heirs and assignees of heirs of F. B. Nayer. They assert that they proved title in themselves from the sovereignty of the soil, and defendants proved no title, and the only semblance of evidence of title in the defendants were dedications, one as a street and the other as a park or parks, same not constituting title, but only an easement.

The two statements quoted below are the only statements under any of the propositions or assignments in plaintiffs' brief seeking to verify this claim of title.

Under the third assignment of error it is as follows: "The plaintiffs proved title in themselves from the sovereignty of the soil, and the defendants offered no evidence of title in themselves, to the lands in controversy, and only offered evidence tending to show public easements, first as to a street, and, second, as to a park or parks, as is disclosed by the statement of facts herein."

This statement makes no reference to the statement of facts for its verification. An examination of the statement of facts from page 1 to 340 would be necessary.

Under the fifth assignment of error and the proposition thereunder appears the following statement relative to the title alleged to be vested in plaintiffs: "The plaintiffs introduced in evidence record title from the sovereignty of the soil to themselves, as shown by pages 17 to 189 of the statement of facts, showing fee simple title in themselves."

Defendants do not acquiesce in the statement that the proof shows record title in the plaintiffs from the sovereignty of the soil. Nowhere else in the brief do plaintiffs state their claimed record title with greater detail.

It is elementary, as a condition to recovery by plaintiff in trespass to try title, there must be a showing of the right to title and possession.

4 Tex.Jur. page 497, Sec. 33.

The question is presented: Should this court, under such meager statements made in plaintiffs' brief, search through this voluminous statement of facts to determine the correctness of their contentions that the proof showed beyond an issue a record title in them? A chain of such claimed record title is not even set forth in the brief. However, we have decided that we shall endeavor to determine whether the proof shows a record title in the plaintiffs.

It seems to be conceded by the parties that title to this property was vested in San Antonio & Aransas Pass Townsite Company. Such title as plaintiffs have was conveyed to their ancestor, F. B. Nayer, by a deed from J. W. Armstrong, as trustee for the Townsite Company. In this deed there is a very general description including all the unsold land and lands within certain boundaries. Then follows a more particular description of the lands conveyed, which does not include the tracts of land in controversy. It seems, however, to be conceded by defendants in their brief that the lands were never sold by the Townsite Company other than it is claimed same were dedicated by that Company as San Diego Street, reserving from this general statement the title conveyed by the Townsite Company to its grantees of lots and blocks bordering on San Diego Street. The deed in question did specifically purport to convey to Nayer Lots 10 and 11, in Block 14. The south boundary line of these lots is shown on the map as the north boundary of San Diego Street. The conveyance vested in Nayer the same rights with reference to a portion of the property in controversy as it did to the other grantees of lots or blocks so bordering on San Diego Street. This deed did not purport to specifically convey to him by metes and bounds by lot or block number the lands in controversy herein.

A vital link in plaintiffs' chain of title is the deed from J. W. Armstrong, as trustee for the Townsite Company to F. B. Nayer. This deed is dated the 28th day of March, 1901, and purports to convey to plaintiffs' ancestor certain lands in and near the town of Alice. There is a general description or statement that same applies to all the unsold land and lands within the bounds set out Then there follows a purported description along lines of certain designated and numbered blocks. There is one place for a short distance that the boundary purports to run along San Diego Creek. We have endeavored to carefully check the boundaries set forth, and same do not close —in fact, in our opinion, fail to enclose a tract of land. This general description is followed by particular description commencing as follows: "The lands herein sold comprise more particularly lots * * *." There follows a detailed description of numerous lots and blocks in accordance with the maps on file. This particular description in no way covers any of the property in controversy. In connection with this statement it should be noted that the deed does purport to convey to the grantee Lots 10 and 11, in Block 14. The southerly boundary of these lots as shown on the map is the north line of San Diego Street. San Diego Street at the time of this conveyance, we gather from the testimony, had a width of something over one hundred and fifty feet. As related to the property in controversy at that time the north line of the Texas-Mexican right-of-way was the south boundary line of San Diego Street. It is fair to assume, we think, that the balance of the lots and blocks bordering on San Diego Street in the location involved were lands sold by the Townsite Company or its trustee prior to the conveyance to Nayer. Certainly they are not included in the deed from Armstrong, trustee, to Nayer. If this be correct, such prior grantees acquired in San Diego Street rights equal to those of plaintiffs' ancestor by virtue of the conveyance to him of Lots 10 and 11.

■ If plaintiffs' ancestor acquired title to the property in controversy, it was by virtue of the very general description in the deed. We do not think that the attempted delineation of exterior lines contained in the general description in the deed was intended to definitely locate the property conveyed. Its purpose was to designate in a general sort of way the area in which the property later specifically described was located. The specific description was intended to delimit and define the property that had not theretofore been sold. This specific description would control, we think, even though the exterior lines of the general description had been sufficient to mark out a definite area, or an area that by running the lines same could be definitely located on the ground. McAnally v. Texas Co., Tex.Civ.App., 32 S.W.2d 947, affirmed 124 Tex. 196, 76 S.W.2d 997; Pierce Estates v. Howard, Tex.Civ.App., 100 S.W. 2d 749.

It is clear, we think, that those who bought property on San Diego Street in accordance with the plan and map adopted by the predecessors of plaintiffs' ancestor in title took rights in fee in San Diego Street to at least the center line thereof. These rights having been conveyed prior to the Nayer deed are superior thereto. Mitchell v. Bass, 26 Tex. 372; Peeples et ux. v. Smith Bros., Tex.Civ.App., 65 S.W.2d 777, and authorities cited.

An abandonment of the street or a portion thereof would not vest the title in Nayer or in plaintiffs. It would free the owners of the bordering lots from the burden of the easement of the street.

We have no way of knowing the theory adopted by the trial court in awarding the "take nothing" judgment against the defendants. What we have said we think under the evidence affords justification therefor.

What we have said disposes of this case, but we deem it not inappropriate to discuss the showing of title made by defendant City of Alice.

Defendants' claim to the property is founded (1) on the adverse use and possession of same for a period sufficient to give title in fee simple by adverse possession; (2) on the dedication of the property by plaintiffs' predecessors in title.

It is elementary we think that the adverse possession and use of property for a public purpose for a statutory period gives the right to the continuance of such use in the same manner as though the property had been condemned for that public use. Victoria v. Victoria County, Tex.Civ.App., 94 S.W. 368 (reversed on other grounds, 100 Tex. 438, 101 S.W. 190).

If we are correct in the foregoing proposition, then we have the question to decide as to whether the City of Alice has an easement or easements in the property involved.

Where dedication is relied on, the grantee enjoys the easement with the express or implied consent of the owner of the land or dedicator.

Where adverse possession and use are relied on, same is in opposition to the rights of the owner.

If defendants established an easement in and to the property, it is of little consequence whether same arose by adverse possession or by dedication. If dedication there was, the only condition or limitation thereof is by the expressed purpose for which the property was dedicated. The Townsite Company by maps divided the City of Kleberg, afterwards Alice, into lots and blocks. On such maps the property in controversy is shown as between the south line of the Texas-Mexican Railway right-of-way and the north line of Blocks 1, 14, 15, 28 and 29. In this strip of ground no street is shown by the maps as extending over same east and west. As early as 1889, when the town was known as Kleberg, the Townsite Company conveyed Lot 12, in Block 14, and described same as fronting on San Diego Street. In 1892 it conveyed Lots 9 and 10, in Block 15, describing same as having a frontage on San Diego Street. In 1889 it conveyed Block 29, giving San Diego Street as one of the boundaries of the block. By the description in connection with the map, San Diego Street was of necessity the north boundary of the block. By a map filed in 1888 by the Townsite Company San Diego Street is shown. From 1889 to 1913 some sort of passageway extended east and west over and along the surfaceway of the strip of ground involved herein. It does not seem to have occupied the entire surface of the strip. Much of the strip was covered by brush. About 1913 or 14 the City of Alice constructed a water works plant on part of this strip; such part being described in plaintiffs' petition as tract No. 5. Considering the entire space between the south line of the railway right-of-way and the north line of Blocks 14, 15, etc., as San Diego Street, where the water works were constructed, this block occupied practically the entire width of San Diego Street. The City has continuously maintained such water works thereon from the date of their establishment to the present time. The possession thereof has been adverse and peaceable up to the filing of this suit.

On November 14, 1921, F. B. Nayer filed a map with a dedication thereon as follows:

"I hereby dedicate to the City of Alice and to the public forever the streets, alleys, parks and plazas not heretofore dedicated, as shown upon this map, out of the lands owned by me. This dedication applies only to the lands lying north of Schley Avenue.

"Witness my hand this 14th day of November, 1921.

"F. B. Nayer."

This map also carries an acknowledgment before a notary of the signature of F. B. Nayer.

This dedication was accepted by the City of Alice on the 23rd day of November, 1921.

A portion of this map bearing relation to the property in controversy is here reproduced.

This dedication, as we interpret same in the light of its provisions, the map, and the conduct of the parties, is sufficient to constitute a dedication of all of the four tracts in controversy as City park property, and San Diego Street, as shown on the map, as a public street, with its eastern terminus as the west boundary line of the tract upon which the City water works were located.

Shortly after this dedication the City cleared the property of brush and graded same, and has continuously used same for park purposes, save the water works tract, where it continuously operated such plant, improving and extending same as the growing needs of the City demanded.

In 1932 the City of Alice executed a deed purporting to convey to Jimmie Lynn Post No. 186, American Legion, Department of Texas, that portion of the land in controversy between Adams and Reynolds Streets, San Diego Street and the Texas-Mexican Railway right-of-way. The recited purpose of the conveyance was that the property be used by the grantee for a lodge or other wholesome amusement purposes. There was a provision for the reversion in case the property was used for other purposes.

On the 26th day of October, 1934, the City executed and delivered to Joe W. Johnson a ten-year lease on the following portions of the property in controversy: "Fronting 50 feet on King Street and running back east between San Diego Street and the Texas-Mexican right-of-way a depth of 150 feet."

This lease contemplated the use of the property for ten years as a filling station. At the expiration of the lease the improvements thereon to revert to the City.

Whether or not the local Post of the American Legion ever used the property deeded to it does not appear from the statements in defendants' brief. Whether the use of the property indicated in the manner indicated in the deed was entirely inconsistent with its use as a public park may be a question of fact. It is to be borne in mind that the tract deeded to the Post was but a portion of a series of small parks dedicated to the City for the use of the public. If the Post did make use of the property in the manner contemplated, the privilege conferred was in the nature of a public memorial in a public place to those who had loyally and unselfishly served the public.

▮ The lease of the defendant Joe W. Johnson is another matter. This use was commercial in character and not necessary or appropriate to the use of the property as a street or a park. This, we take to be a use unauthorized by the easement conferred by the dedication of the property. It was a deviation from or misuse of the easement arising from the dedication of the property.

▮ The City water works were shown on the map upon which the dedication by F. B. Nayer was written. The mere delineation on the map of the plot where the water works were situated, perhaps, in and of itself, would not constitute the dedication of same as either a park or dedicate same for the public purpose of maintaining a water works plant. However, taking the evidence as a whole, we think the proof sufficient to establish by adverse use or by dedication an easement on the part of the City to make use of the land for that purpose. Its use has been continuous and for a long period of time. Cockrell v. City of Dallas, Tex.Civ.App., 111 S.W. 977. It is impossible to tell from the record upon which theory, if either, the judgment of the trial court was founded.

▮ Bearing on the issue of limitation or prescription, plaintiffs offered evidence that after the institution of this suit the City of Alice, in 1939, sought to levy a paving assessment against plaintiffs as to part or all of the property here involved. This act has an evidentiary bearing as to the question of adverse possession and as to dedication. It is not conclusive on either issue, however. The rights of the parties had been fixed before this time. We do not think it estops the defendants as asserted by plaintiffs. This evidence as to the paving assessment is the only evidence of the attitude of the parties hereto with reference to the rendition of the property for taxation, the assessment or collection of taxes by the City of Alice. For aught that appears in the record, this was the first time since 1889 that the City in any way sought to or collected taxes on the property. We think it fair to assume that if the City had sought to collect taxes thereon since 1921 at least, the plaintiffs would have offered evidence thereof.

Adverse possession and the extent and character of the right claimed was one of the salient issues in the case; as likewise was the question of dedication and the extent and nature thereof. Non-assessment would have been consistent with plaintiffs' claim of right in the property; assessment inconsistent thereof. Evidence along this line would have had bearing on the question of dedication as well as adverse possession.

▮ Assuming title in plaintiffs we deem the evidence is amply sufficient to show an easement vested in the City of Alice and devoted the tract on which the

water works plant is situated to that purpose; likewise to establish an easement conferring the right upon the City to devote the other four tracts to park purposes. Furthermore, we believe the evidence sufficient to sustain, as to the water works tract, a title in fee simple acquired by adverse possession.

The lease for filling station purposes to Joe W. Johnson, is a clear misuser or deviation from the dedication. This is perhaps likewise true as to the deed to the American Legion. Further, if San Diego Street was dedicated by the Townsite Company to the public as a street of sufficient width to include all of the property in controversy, that the subsequent dedication, as shown on the map filed by F. B. Nayer, and the acceptance thereof by the City of Alice, and the conduct of the parties with reference to same since 1921, limited the easement of San Diego Street to that shown on the Nayer map of 1921.

There would remain in this case, assuming that the City had established an easement only, but two questions:

(1) What is the legal effect of the deviations or misuser by the City of the easement?

(2) Assuming they have not the effect of terminating the easement of the City, then, did the court err in entering an unqualified "take nothing" judgment against the plaintiffs?

▮ A mutually acquiesced in abandonment of a public easement terminates same, and frees the property in the hands of the grantor from such easement. State v. Travis County, 85 Tex. 435, 21 S.W. 1029.

▮ A city vested with an easement for a public purpose holds same in trust for the public. The deviation from the dedication or the misuse of the easement gives rise to a legal remedy. This remedy, however, is not ordinarily a forfeiture of the easement. Especially is this true if the property is susceptible of a use consistent with the use contemplated by the dedication creating the easement.

▮ We think it clear that the plaintiffs are not entitled to recover the possession of the property as against a valid and subsisting easement of the City thereon.

The question of the proper judgment for the trial court to have rendered in case an easement only had been established is a question of some doubt and difficulty.

The relief sought by plaintiffs was not to compel the City to confine its use of the property to its interest therein. Their view was that the City was without interest in the property, and an unconditional recovery was sought.

▮ Plaintiffs failed to show that the misuser damaged in any way; failed to show that they owned other property in the City of Alice.

In the case of Pitts v. Camp County, Tex. Civ.App., 42 S.W.2d 853, conforming to answers to certified questions, 120 Tex. 558, 39 S.W.2d 608, a judgment on cross-action in favor of the defendant county asserting an easement in the property was reversed. However, a judgment in favor of the defendant county as to plaintiffs' suit was affirmed.

In view of our disposition of the case on other grounds, it is unnecessary to decide just what form of judgment should have been entered had plaintiffs established title and the City only an easement.

Judgment is affirmed.