DAVIS et al. v. FIELD et al.
No. 15042.

Court of Civil Appeals of Texas.
Fort Worth.
June 24, 1949.

Rehearing Denied Sept. 16, 1949.

Fred H. Minor, John L. Sullivan, and Geo. M. Hopkins, all of Denton, for appellants.

A. V. Grant, of Saint Jo, for appellees.

McDONALD, Chief Justice.

On May 13th we affirmed the judgment of the trial court on the ground that the description in the mineral deed hereinafter referred to was inadequate to locate the land intended to be covered by it. Upon consideration of appellants' motion for rehearing we have come to the conclusion that we were in error in such respect. Our former opinion is withdrawn, and this opinion is substituted therefor.

On February 14, 1874, S. D. Hughes settled on a 160 acre tract of land in Montague County, which was surveyed for him on February 28, 1874, by the County Surveyor, his settlement was for the purpose of obtaining title for a homestead under the act designated "An Act for the benefit of actual occupants of the public lands," approved May 26, 1873, Acts 13th, Leg. p. 101, and acts prior thereto. On October 6, 1875, S. D. Hughes executed and acknowledged an instrument in writing reading as follows:

"The State of Texas
"County of Montague

Know All Men By These Presents, that for and in consideration of one dollar to me in hand paid by Wm. Fanning, F. E. Taylor, J. M. Grigsby, & co. all of the County and State aforesaid the receipt thereof is hereby acknowledged and for and in consideration of the discovery of Mineral on a described tract or parcel of land situated in Montague county, to-wit: 160 acres of land pre-emption surveyed for S. D. Hughes situated on the waters of Denton Creek about 10 miles S. E. from the town of Montague, Beginning at the North cor. of a 160 acre survey in the name of John Morris; Thence N. 45 W. to the line of W. J. Mobley preemption sur; Thence N. 45 E. to Mobley E. cor; Thence N. 45 W. 300 vrs. Thence N. 45 E.—Thence S. 45 W. to the line of the said John Morris survey; Thence N. 45 W. to the place of beginning, hereby binding myself my heirs,

executors and administrators, to release and convey unto the aforesaid Wm. Fanning, F. E. Taylor, J. M. Grigsby & Co. one half of the mineral that has or may be discovered on said described land with all and singular the rights and privileges of erecting any and all machinery necessary on said described land for working said mineral. And I further bind myself to secure a patent on said land according to the preemption laws of the State of Texas, and I further agree if I should sell and transfer my right to said described land I bind myself my heirs, and assigns to reserve unto the said Fanning, Taylor, Grigsby & Co., one half of the mineral on said land with all the privileges herein specified hereby granting unto the aforesaid Fanning, Taylor, Grigsby & Co., all and singular the rights to sell convey and dispose of one half of the mineral by shares or otherwise on said land hereby granting to the aforesaid, Fanning, Taylor, Grigsby & Co., their heirs and assigns all and singular the rights privileges herein mentioned making this contract binding by law as herein specified.

"Given under my hand this 6th day of October, A.D. 1875.

"S. D. Hughes.

"The State of Texas
"County of Montague

"Before the undersigned authority personally appeared S. D. Hughes, to me known and acknowledged that he signed executed and delivered the foregoing Contract for the purposes and considerations therein specified.

"Witness my official seal and signature at office in the town of Montague, this the 6th day of October, A.D. 1875.
"(Seal)      H. N. Richards, Notary Pub.
M. C. Texas."

Said instrument was filed for record in the deed records of said County on July 1, 1879.

Hughes occupied the land for the three year period following his settlement thereon in 1874, and on August 18, 1883, executed a quitclaim deed to the land in favor of A. Mobley as grantee. No mention was made in said quitclaim deed of the above described mineral deed. On November 21

1891, a patent was issued to Augustus Mobley as assignee of S. D. Hughes. It is undisputed from the facts shown by the record that the issuance of the patent was based on the settlement and occupancy of the land by Hughes and the transfer of his rights to Mobley.

Appellants are the heirs of the grantees named in the mineral deed executed by Hughes. Appellees are Mobley's successors in title.

■■■ In our former opinion we held that the description in the mineral deed was insufficient to describe the land intended to be covered. In substance our holding was that some of the calls in the metes and bounds description cut off parts of the survey, thus destroying any inference that the parties intended to convey an interest in the whole survey, and that the description was insufficient to describe any particular portion of the survey. We are now convinced that we were in error in so deciding, and that the case is governed by the rule that where premises are sufficiently described as a whole, the description is not invalidated by a further description that is erroneous or incomplete. 4 Thompson on Real Property, 1924 Ed., page 265; 14 Tex.Jur. 1003; Arambula v. Sullivan, 80 Tex. 615, 16 S.W. 436; 16 Am.Jur. 600. "The general principle that the purpose of the courts in construing deeds is to ascertain the intention of the parties applies to the description of the land as well as to other parts of the deed." 14 Tex.Jur. 1027. "A sound rule of construction requires an interpretation under which the deed will be valid and operative in preference to one which will nullify it." Id., p. 915. "The language of a deed is the language of the grantor, and, if there be a doubt as to its construction, it should be resolved against him." Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551, 552. "For the purposes of ascertaining intention, all the provisions of the deed in controversy are considered." 14 Tex.Jur. 919.

For whatever it may be worth, we find from the record that when Hughes filed his application as a settlor, preparatory to having the land surveyed, the description of the land set out in his application was the same as the erroneous metes and bounds description set out in the mineral deed from Hughes to Fanning et al. This application was dated February 14, 1874. The land was surveyed by the county surveyor on February 18th of the same year, and the field notes of the latter correspond to the description set out in the patent.

■■■ We refer to the instrument in question as a mineral deed, as a means of easy identification, but appellees argue vigorously that it was not couched in language sufficient to constitute it a present conveyance of an interest in the minerals, but at most was only an executory contract to convey, enforcement of which was long ago barred by limitations. Although the language of the deed in some respects tends to support appellees' construction, we are inclined to the view that it should be treated as an attempted present conveyance of the minerals, and we so hold.

■■■ "Neither under the statute (of conveyances) nor by the common law are technical words essential to a conveyance. The employment of language sufficient to show a purpose and intent to convey is all that is required. Whatever may be the inaccuracy or inaptness of the expressions used, if the intention to pass the title can be discovered, the courts will give effect to the instrument and construe the words accordingly." 14 Tex.Jur. 772.

Besides the fact that some of the language of the deed is consistent only with the idea that a present conveyance was intended, there is the fact that the instrument is lacking in language sufficient to show when and upon what terms a future conveyance would be executed.

Appellees also contend, to quote from one of their points of error, that Hughes "had not such an interest in the land in controversy that would permit of his disposing or attempting to dispose of minerals under said land." They cite the declaration from Lamb v. James, 87 Tex. 485, 29 S.W. 647, 649: "Public lands are not a lawful subject of private contract, and an attempted conveyance thereof by one private person to another passes no interest whatever in the land * * *." They say that Hughes' only right was either to oc-

cupy the land himself for the three year period, then make proof of occupancy and obtain a patent, or to transfer his inchoate rights to another who in turn would have to complete the unfinished period, if any, of occupancy, make proof, and obtain the patent.

We have been cited to no case, nor have we found one, dealing with an attempted conveyance of an interest in the minerals by a homesteader during the time he was completing his period of occupancy. Hughes had a right to transfer all of his interest in the land to another, and the latter would in such case have had the benefit of Hughes' settlement and occupancy. Cagle v. Sabine Valley Timber & Lumber Co., 109 Tex. 178, 202 S.W. 942, 6 A.L.R. 1426. The patent, whether issued in the name of the original settlor or in the name of his assignee, would have enured to the benefit of the latter. Registration of a transfer of Hughes' rights in the deed records of the county where the land lay would have been constructive notice of such to those later dealing with the land. The right of the settlor is an inchoate right to the land, which will ripen into a title on issuance of the patent, and the title conferred by the patent relates to its origin, to wit, the original settlement, and takes the impress of its character from it. Cagle v. Sabine Valley Timber & Lumber Co., supra. A transfer of the settlor's rights in the land, accompanied by a change of possession and by use and occupancy by the transferee, would do no violence to the rights of the State, and would not fall with the condemnation declared in the quotation from Lamb v. James, supra.

But it is plain that an attempted present conveyance of the minerals, accompanied by removal of minerals from the land, before the settlor had acquired full title to the land, would be in derogation of the State's rights. A conveyance of the minerals is a conveyance of a part of the land itself. Hughes was without any lawful authority to make a conveyance of the minerals or an interest in them when he executed the mineral deed to Fanning and others on October 6, 1875. No title passed under such deed, unless appellants be correct in contending that title to the minerals became good in the grantees when title passed from the State on issuance of the patent, under the doctrine of after-acquire title.

Beginning at page 899 of Vol. 14, Texas Jurisprudence, will be found statements of rules and citations of authorities pertaining to the vesting of after-acquired title. "A grantor will not be heard to say, after he has delivered a deed purporting to convey the land, that he had no title thereto or that no title passed under the deed." Page 899. "The rule adopted in Texas * * * is that the title passes to the grantee eo instanti upon his grantor's acquisition of it." Page 908. The estoppel to assert the after-acquired title is binding on subsequent purchasers with notice from the grantor. Baldwin v. Root, 90 Tex. 546, 40 S.W. 3. The record of the mineral deed in the county where the land is located is constructive notice to subsequent purchasers. Cagle v. Sabine Valley Timber & Lumber Co., supra.

"The principle underlying the doctrine of estoppel is that one who has contracted with another ought not to be permitted to deny what he has represented as being true; and this is the basis, also, for holding that the grantor is estopped by his deed from holding a subsequently acquired title as against his grantee." 14 Tex.Jur. 901. "The ultimate test of whether any particular deed imports an estoppel is: Did the grantor expressly or impliedly represent thereby that he held title to the land conveyed?" Id. 902. "For the purpose of determining the character of the deed—as implying or not implying any representation of title on the part of the grantor—the general rules for the construction of deeds are applicable, the paramount rule being that the intention of the parties, as manifested by the language of the deed, must prevail." Id., 904. " * * * an instrument purporting to convey only the grantor's right, title and interest does not work an estoppel as to subsequent acquisition of title." Id., 905. An intent to convey the land itself appears from a general warranty of title, Id., 905, but the estoppel may arise where there is no express covenant of warranty, where the deed purports to convey

the fee and purports to show the grantor as the owner of the fee. 16 Am.Jur. 636.

■ What are the representations, expressed or implied, in the mineral. deed from Hughes to Fanning et al? Hughes did not represent himself as the owner, but only as one holding under pre-emption rights and expecting later to acquire a patent. The grantees in the mineral deed, being charged with knowledge of the law, knew that Hughes had no right to make them a present conveyance of the minerals, and they, as well as Hughes, knew that any severance of minerals before issuance of the patent would be in fraud of the State's rights in the land. Throughout the opinions in cases involving pre-emption and like rights in public lands, it is recognized that a vital element involved in the acquisition of title in such manner is the settlement and occupancy of the land. Hughes and his grantees knew that the inchoate pre-emption rights could be ripened into title only by occupancy of the land for the required period. The only occupancy of the minerals possible under the mineral deed would have been a mining and severance of the minerals, and both Hughes and his grantees knew that Hughes had no right under the law to grant them such rights in the land. Appellants, the heirs of the grantees, can have no better rights than did the grantees themselves. It is true that Hughes failed in his agreement to obtain a patent to the land and to reserve unto Fanning et al., the granted mineral interest when he transferred his pre-emption rights to Mobley, but we do not believe that such facts can serve to invoke the rules of after-acquired title. Hughes had no lawful right to convey an interest in the minerals, and the facts recited in his deed showed that he did not. Since title did not pass at the time the mineral deed was executed, and since the case is not a proper one for the application of the equitable doctrine of after-acquired title, no basis is left for the assertion by appellants of an interest in the minerals in said land.

Since we have already rendered judgment affirming the judgment of the trial court, but for reasons different from those here stated, the order now entered is one overruling appellants' motion for rehearing. In view of the opinion now delivered, all parties may file motions for rehearing within fifteen days after this date.

## HALL, Justice.

The writer concurs in the majority opinion written by Chief Justice McDonald affirming judgment of the trial court.

The writer does not construe the written instrument in question to be a deed because the same could be classified as nothing more than an executory contract for the following reasons:

1. The main consideration is based upon Fanning, Taylor and Grigsby to discover minerals on said land.

2. S. D. Hughes bound himself, his executors and administrators, that he would (in the future) release and convey unto the aforesaid Fanning, Taylor and Grigsby one-half the minerals that may be found on the land.

3. All parties recognized the fact that Hughes did not own title to the land, he therefore bound himself to secure (in the future) a patent on said land according to the pre-emption laws of the State of Texas.

4. He further agreed that if he ever sold and transferred said land he would bind himself, his heirs and assigns, that he would (in the future) reserve unto the said Fanning, Taylor and Grigsby one-half the minerals.

5. He closed the instrument by stating, "* * * making this Contract binding by law as herein specified."

6. In his acknowledgment he acknowledged before the notary public "that he signed executed and delivered the foregoing Contract for the purposes and considerations therein specified."

In construing a written instrument such as the one in question here, intention of the parties must control regardless of what may be the most appropriate term by which the instrument should be designated, Worley v. Empire Gas & Fuel Co., 129 Tex. 532, 103 S.W.2d 368; Peterson v. Holland, Tex. Civ.App., 189 S.W.2d 94; provided the

construction that is most consistent with the intention of the grantor as gathered from the terms of the conveyance should be accepted as controlling, Pierce Estates v. Howard, Tex.Civ.App., 100 S.W.2d 749, error dismissed; in ascertaining such intent of a grantor, however, it is not necessarily a function of the court to ascertain what he meant to say but only the meaning of what he did say. Holloway's Unknown Heirs v. Whatley, 133 Tex. 608, 131 S.W.2d 89, 123 A.L.R. 843.

Conceding, for sake of argument, the written instrument in question is a deed, then, in that event, the rule of after-acquired title will not apply under the authorities announced in the majority opinion, as well as those announced in the case of Clark v. Gauntt, 138 Tex. 558, 161 S.W. 2d 270, wherein it was held by our Supreme Court, among other things, "The estoppel in the after-acquired title cases arises from the assertion of ownership made by the grantor in the covenant of warranty, express or implied, or in other recitals in the deed. Such assertion is a representation that the grantor owns the land or the estate or interest to which it relates, and having thus represented the fact of ownership, the grantor is estopped to deny that fact."

As stated before, Hughes did not assert ownership but to the contrary he expressly denied ownership.

Then too, it is against public policy for individuals to attempt to convey public lands. See Lamb v. James in majority opinion.

It is also the opinion of the writer that Fanning, Taylor and Grigsby could only receive from Hughes a right to occupy the land and to receive credit for his inchoate rights of his past occupancy; if, as and when they had completed the unfinished period of occupancy and made proof thereof satisfactory to the state, it was incumbent upon the state to issue the patent. The only consideration required by the state under the pre-emptory act before it vested title was that of occupancy by the applicant or his successors for a period of three years. This was for the sole purpose of inhabiting the state. The facts do not relate that Fanning, Taylor and Grigsby ever occupied any portion of the land. Hence, whatever right they acquired from Hughes they waived it by non occupancy of the land.